Slip Op. 99 - 16

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x

WOLVERINE TUBE (CANADA), INC.,          :

                      Plaintiff,        :

              v.                        :

THE UNITED STATES,                      :   Court No. 98-12-03241

                      Defendant,        :

              -and-                     :

HUSSEY COPPER, LTD. et al.,             :

              Intervenor-Defendants. :

- - - - - - - - - - - - - - - - - - - -x


Memorandum

[Plaintiff's application for preliminary
 injunction denied; action dismissed.]

                        Decided: February 5, 1999


     Rogers & Wells LLP (Carrie A. Simon and Ryan Trainer) for
the plaintiff.

     David W. Odgen, Acting Asistant Attorney General; David M.
Cohen, Director, Velta A. Melnbrencis, Assistant Director, Com-
mercial Litigation Branch, Civil Division, U.S. Department of
Justice(Michele D. Lynch); and Office of Chief Counsel for Import
Administration, U.S. Department of Commerce (Linda S. Chang), of
counsel, for the defendant.

     Collier, Shannon, Rill & Scott, PLLC (David A. Hartquist,
Jeffrey S. Beckington, Mary T. Staley and John M. Herrmann) for
the intervenor-defendants.


          AQUILINO, Judge:  The above-named parties agreed dur-

ing oral argument that this action raises an issue of first im-

pression, namely, whether the Court of International Trade has

jurisdiction to enjoin administrative proceedings by the Inter-national Trade Administration, U.S. Department of Commerce ("ITA") pending resolution of an appeal to a binational panel constituted under the North American Free Trade Agreement ("NAFTA") that might obviate those proceedings.  The court concludes that it has such jurisdiction pursuant to 28 U.S.C § 1581(i), contingent upon a showing by an applicant that judicial review of them in regular course pursuant to 28 U.S.C. §1581(c) would be "manifestly inadequate".  Compare Miller & Co. v. United States, 824 F.2d 961 (Fed.Cir. 1987), cert. denied, 484 U.S. 1041 (1988), and Hylsa, S.A. de C.V. v. United States, 21 CIT ___, 960 F.Supp. 320 (1997), aff'd, 135 F.3d 778 (Fed.Cir. 1998), with Techsnabexport, Ltd. v. United States, 16 CIT 420, 795 F.Supp. 428 (1992), and Makita Corp. v. United States, 17 CIT 240, 819 F.Supp. 1099 (1993).

I

The plaintiff commenced this action on the eve of a deadline to supplement the record of an ITA administrative review of Antidumping Duty Order; Brass Sheet and Strip From Canada, 52 Fed.Reg. 1,217 (Jan. 12, 1987), for the year 1997.  See 63 Fed. Reg. 10,002 (Feb. 27, 1998).  Among other relief, it seeks to enjoin further agency proceedings with regard to that year

> pending resolution of a motion for remand that . . .
> Wolverine has filed in a separate NAFTA Appeal con-
> testing the final results of the Department's admin-
> istrative review of entries of Wolverine products
> during calendar year 1996 . . . in Brass Sheet and
> Strip from Canada, NAFTA Secretariat File No. USA-
> CDA 98-1904-03.

According to the complaint, ITA annual reviews of 1994 and 1995 resulted in <u>de minimis</u> margins of dumping, and,

> [b]ased on the verified evidence in the 1996 Review, the Department preliminarily found Wolverine to have a <u>de minimis</u> dumping margin of 0.42%, and decided to revoke Wolverine from the underlying antidumping order. <u>Brass Sheet and Strip from Canada; Preliminary Results of Antidumping Duty Administrative Review</u>, 63 Fed.Reg. 64,666 (Dep't Comm. 1997). . . .

Complaint, para. 10. The plaintiff further avers that the final margin for 1996, 0.67 percent[1], was the direct result of an agency calculation error, which the ITA "has admitted in the NAFTA appeal"[2].

> When the Department corrects its admitted error and reduces Wolverine's dumping margin to a <u>de minimis</u> rate, the Department should also logically resolve . . . whether Wolverine should have been revoked from the underlying antidumping order.

<u>Id</u>., para. 9.  Furthermore,

> if Wolverine [had] been revoked from the antidumping duty order at the conclusion of the 1996 Review, the Department would have had no legal authority to conduct administrative reviews of post-1996 entries of Wolverine's products.  Nevertheless, since revocation did not occur due to the Department's admitted error in the 1996 Review, the Department has proceeded to conduct the 1997 Review, at great expense and substantial burden to Wolverine.
>
> 14.  As a result of the Department's admission that the 1996 Review results were flawed, Wolverine on November 2, 1998 filed a motion in the NAFTA Appeal to remand the contested agency decision to the Depart

---

[1] <u>See</u> 63 Fed.Reg. at 33,041.

[2] Complaint, para. 7.  <u>But</u> <u>see</u> Defendant's Memorandum, pp. 4-6, <u>and</u> <u>compare</u> <u>with</u> <u>id</u>., Appendix, Collective Exhibit 1b, 6th and 10th to 12th pages.  <u>Cf</u>. Defendant-Intervenors' Opposition to Plaintiff's Motion, pp. 8-9 n. 2.

> ment to correct its admitted error.  Wolverine rea-
> soned that . . . a remand now would be the most le-
> gally, procedurally, and pragmatically appropriate
> course of action.  . . .

Id., paras. 13, 14.  The complaint also shows that the ITA

opposes remand at this time (as do the U.S. petitioners,

intervenor-defendants herein) and sets forth plaintiff's (un-

successful) efforts to get the agency to agree to suspend fur-

ther proceedings covering 1997.  See id., paras. 15, 16.

The court held an immediate conference with all counsel

on plaintiff's request for a temporary restraining order, which

was denied.  A hearing on plaintiff's application for a prelimi-

nary injunction was subsequently held in open court pursuant to

order to show cause, by which time the company had complied with

the ITA's request for supplemental data for 1997.

## II

A temporary restraining order or preliminary injunction

is an extraordinary remedy which can only be granted upon show-

ing:

> (1) A threat of immediate irreparable harm; (2) that
> the public interest would be better served by issu-
> ing than denying the injunction; (3) a likelihood of
> success on the merits; and (4) that the balance of
> hardship on the parties favor[s issuance].

S.J. Stile Assocs., Ltd. v. Snyder, 68 CCPA 27, 30, C.A.D. 1261,

646 F.2d 522, 525 (1981); American Stevedoring Inc. v. U.S.

Customs Service, 18 CIT 331, 335, 852 F.Supp. 1067, 1071 (1994).

While this and other courts have held that the severity of the

injury the moving party will sustain without injunctive relief is in inverse proportion to the showing of likelihood of success on the merits[3], they have also held that failure to bear the burden of persuasion as to any one of these four factors is ground for denial for such remedy.  E.g., <u>Bomont Industries v. United States</u>, 10 CIT 431, 638 F.Supp. 1334 (1986).  <u>See</u> <u>FMC Corporation v. United States</u>, 3 F.3d 424, 427 (Fed.Cir. 1993).

Here, none of the four factors favors the plaintiff. While there is no reason to doubt plaintiff's concern about "out-of-pocket expenses" and that "active participation in an antidumping case also places substantial burdens on key administrative staff th[at] are critical to the operations of the company"[4], the court cannot conclude that those expectable costs are the equivalent of "irreparable harm".  <u>Cf</u>., <u>e.g.</u>, <u>Sampson v. Murray</u>, 415 U.S. 61 (1974); <u>Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n</u>, 758 F.2d 669 (D.C.Cir. 1985); <u>Arbor Foods, Inc. v. United States</u>, 8 CIT 355, 600 F.Supp. 217 (1984).

The public interest, as the plaintiff properly points out, is the "fair and efficient administration of U.S. trade laws, as well as the appearance of such administration in the

---

[3] <u>See</u>, <u>e.g.</u>, <u>Makita Corp. v. United States</u>, 17 CIT 240, 250, 819 F.Supp. 1099, 1108 (1993); <u>Ceramica Regiomontana, S.A. v. United States</u>, 7 CIT 390, 395, 590 F.Supp. 1260, 1264 (1984); <u>American Air Parcel Forwarding Co. v. United States</u>, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981).

[4] Plaintiff's Memorandum, p. 22.

eyes of all who come within their realm"[5], but the court cannot also concur that requiring Wolverine to continue its compliance with those laws is "patently unfair and inefficient". Plaintiff's Memorandum, p. 28. Indeed, their fair and efficient administration may well soon lead, as the plaintiff believes, to a determination by the ITA to revoke the antidumping-duty order against it. But even if and when the ministerial error at issue in the NAFTA proceedings is corrected, and thereby causes plaintiff's 1996 margin to become de minimis, revocation would not be automatic, as the plaintiff seemingly pretends. The statute governing the ITA in this regard, 19 U.S.C. §1675(d)(1), provides that, in general, it "may" revoke an order after an administrative review thereunder. The agency's published regulation is to the same effect. See 19 C.F.R. §351.222(b) (1998). This standard, combined with the traditional reluctance of courts to intervene in administrative proceedings before they have run their complete course[6], leaves the likelihood of plaintiffs' success on the merits, at best, debatable. Finally, with respect to the balance of hardships, the intervenor-defendants point out that

> Wolverine itself requested that this review be conducted and has already submitted its original and supplemental questionnaire responses. No additional

---

[5] Makita Corp. v. United States, 17 CIT at 250, 819 F.Supp. at 1107.

[6] See, e.g., Federal Trade Comm'n v. Standard Oil Co. of Calif., 449 U.S. 232 (1980), and cases cited therein.

duties can be imposed on Wolverine's imports until the final determination is reached. Any hardship imposed on Wolverine, therefore, is minimal. In contrast, a hardship would exist for the Department and the domestic industry if this review were to be stopped and then, at some time in the future, resume. Considerable resources have already been expended by both the Department and the domestic industry in this review. If Wolverine is found to be dumping in this review, delaying the ultimate resolution of this administrative review and the proper imposition of antidumping duties by stopping the 1997 review at this point would be detrimental to the efficient administration of the law and to the interests of the domestic industry.

Defendant-Intervenors' Opposition to Plaintiff's Motion, p. 4.

See generally Appendix to Defendant's Memorandum, Collective

Exhibit 2. Given these circumstances, there is little room for

even debate that any hardship(s) tip decidedly in plaintiff's

favor.

                                III

          In short, in view of the foregoing, plaintiff's application for a preliminary injunction must be denied. And in

failing to sustain its burden for this immediate, extraordinary,

equitable relief, the plaintiff has also failed to convince this

court that jurisdiction pursuant to 28 U.S.C. §1581(c) would be

manifestly inadequate. Ergo, this action should be dismissed.

          Judgment will enter accordingly.

Decided:  New York, New York
          February 5, 1999


                                        _____
                                                    Judge