Slip Op. 05 - 121

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x
EATON CORPORATION,                    :

                    Plaintiff,        :

          v.                          : Court No. 05-00487

THE UNITED STATES OF AMERICA; DEPART- :
MENT OF HOMELAND SECURITY, UNITED
STATES CUSTOMS AND BORDER PROTECTION; :
and UNITED STATES INTERNATIONAL TRADE
COMMISSION,                           :

                    Defendants.       :
- - - - - - - - - - - - - - - - - - - x

<u>Opinion & Order</u>

[Plaintiff's motion for preliminary order
 of exclusion of certain German automated
 mechanical transmission systems for med-
 ium- and heavy-duty trucks granted.]

Dated: September 9, 2005

    <u>Miller & Chevalier Chartered</u> (<u>Sturgis M. Sobin</u>, <u>Joel W. Rog-</u>
<u>ers</u>, <u>Charles F.B. McAleer, Jr</u>. and <u>Daniel P. Wendt</u>) for the
plaintiff.

    <u>Peter D. Keisler</u>, Assistant Attorney General; <u>Barbara S.</u>
<u>Williams</u>, Attorney in Charge, International Trade Field Office,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (<u>Mikki Graves Walser</u> and <u>Marcella Powell</u>); and Office of
Assistant Chief Counsel, U.S. Bureau of Customs and Border Pro-
tection (<u>Michael W. Heydrich</u>), of counsel, for defendants United
States of America and Department of Homeland Security, U.S. Customs
and Border Protection.

    <u>James M. Lyons</u>, General Counsel, and <u>Andrea C. Casson</u> and
<u>Michael Diehl</u> for defendant U.S. International Trade Commission.

    <u>Neville Peterson LLP</u> (<u>John M. Peterson</u>, <u>George W. Thompson</u> and
<u>Curtis W. Knauss</u>) and <u>White & Case LLP</u> (<u>Lyle B. Vander Schaaf</u>) for
proposed intervenor-defendant ArvinMeritor, Inc.

          AQUILINO, Senior Judge: This case for judicial review of

alleged lack of enforcement by U.S. Customs and Border Protection

("CBP") of the right(s) of the plaintiff U.S. patent holder was commenced by the filing on August 19, 2005 of a summons, complaint, application for a temporary restraining order and preliminary injunction, and application for an immediate order to show cause in connection therewith.  That secondary application was granted, in part upon the ground that but a week earlier, on August 12, 2005, Eaton Corporation had come to this court with a motion for leave to intervene as a party to ArvinMeritor, Inc. v. United States, CIT No. 05-00461, only to learn upon the first call of that matter (via order to show cause at the behest of that plaintiff) that the government defendants and it had just executed a Stipulation of Settlement and Dismissal pursuant to USCIT Rule 41(a)(1), which, among other things, rescinded one form of certification pro-mulgated by CBP in favor of another such form to apply with regard to the Limited Exclusion Order (or "LEO"), 70 Fed.Reg. 19,094 (April 12, 2005), published by the U.S. International Trade Commission ("ITC") in conjunction with its investigation requested by Eaton Corporation pursuant to 19 U.S.C. §1337 and carried out sub nom. Matter of Certain Automated Mechanical Transmission Systems for Medium-Duty and Heavy-Duty Trucks and Components Thereof, Inv. No. 337-TA-503.   See ArvinMeritor, Inc. v. United States, 29 CIT ___, Slip Op. 05-96 (Aug. 12, 2005).

In other words, the crux of the complaint of Arvin-Meritor, Inc., which has interposed a motion for leave to intervene

as a party defendant herein[1], as well as of the complaint of Eaton Corporation, was and is CBP enforcement of the ITC's <u>Limited Exclusion Order</u>.

I

The defendants were ordered to show cause at a hearing that commenced on August 24, 2005, why the plaintiff should not be granted the requested, immediate, equitable relief and why joinder of issue and discovery in connection therewith should not be expedited.  Counsel for defendant(s) United States and CBP appeared in opposition to all of the relief requested and also filed an immediate motion to dismiss this action for lack of subject matter jurisdiction pursuant to USCIT Rule 12(b)(1) or, in the alternative, to stay it, pending further administrative action.[2]  Arvin-Meritor, Inc.'s motion for leave to intervene was filed with a proposed answer to plaintiff's complaint.  It also has filed a motion for leave to interpose a written response to plaintiff's application for immediate relief.[3]

A

The complaint is not an exemplar of what USCIT Rule 8(a) requires.  To parse it (and the papers filed in support) for

_____

[1] This motion can be, and it hereby is, granted.

[2] Defendant ITC has not yet filed a response to the complaint, but it was well-represented by its counsel at the hearing and has now submitted a written statement, which was received in chambers on September 8, 2005, that it "takes no position on the substantive issues before the Court."

[3] This motion of the [proposed] intervenor-defendant also can be, and it hereby is, granted.

purposes of this opinion, the ITC proceedings pursuant to 19 U.S.C. §1337 began on or about January 2004 and resulted in an opinion made public on May 9, 2005.  See Plaintiff's Memorandum of Points and Authorities, Exhibit 4.  Among other things, it reports:

> . . .[A] complaint filed by Eaton Corporation . . . of Cleveland, Ohio . . ., as supplemented, alleged viola-tions of section 337 of the Tariff Act of 1930 in the importation into the United States, the sale for im-portation, and the sale within the United States after importation of certain automated mechanical transmission ("AMT") systems for medium-duty and heavy-duty trucks, and components thereof, by reason of infringement of claim 15 of U.S. Patent No. 4,899,279 ("the '279 patent"); claims 1-20 of U.S. Patent No. 5,335,566 ("the '566 patent"); claims 2-4 and 6-16 of U.S. Patent No. 5,272,939 . . .; claims 1-13 of U.S. Patent No. 5,624,350 . . .; claims 1, 3, 4, 6-9, 11, 13, 14, 16 and 17 of U.S. Patent No. 6,149,545 ("the '545 patent"); and claims 1-16 of U.S. Patent No. 6,066,071 . . ..  The complaint and notice of investigation named three respondents[:] ZF Meritor, LLC ("ZF Meritor") of Maxton, North Carolina, ZF Friedrichshafen AG ("ZFAG") of Freidrichshafen [*sic*], Germany, and ArvinMeritor, Inc. . . . of Troy, Michigan. Claim 15 of the '279 patent, claim 4 of the '566 patent, and claims 1, 3, 6, 7, 11, 13, 16, and 17 of the '545 patent remained at issue at the time that the administra-tive law judge ("ALJ") issued his final initial determi-nation ("ID").
>
> . . . The ALJ found a violation of section 337 by reason of infringement of claim 15 of the '279 patent by respondents.  He did not find a violation based on in-fringement of the asserted claims of the remaining patents.  Petitions for review were filed by Eaton, the respondents, and the Commission investigative attorney ("IA") on January 21, 2005.  All parties filed responses to the petitions on January 28, 2005.
>
> On February 24, 2005, the Commission issued a notice that it had determined not to review the ALJ's final ID on violation, thereby finding a violation of section 337. 70 *Fed.Reg*. 10112 (March 2, 2005).  The Commission also requested briefing on the issues of remedy, the public interest, and bonding. *Id*. . . .

Id., pp. 1-2.  With regard to remedy,

> all the parties agree that the appropriate remedy is a limited exclusion order excluding AMT systems, manufactured by or for the respondents, that infringe claim 15 of '279 patent and a cease and desist order directed to the domestic respondent, ArvinMeritor.  Moreover, the parties agree that the orders should include a certification provision and that the cease and desist order should contain a record-keeping requirement.  Finally, the parties agree that the issuance of remedial orders directed against the respondents' AMT systems would not be contrary to public interest.  The parties disagree, however, . . . about the scope of any certification provision or record-keeping requirement.
>
> Eaton argues that the remedial orders should cover all of respondents' AMT systems that infringe claim 15 of the '279 patent and should not be limited to specific models or types of transmissions.  The respondents argue that the orders should only cover AMT systems for medium-duty and heavy-duty trucks that infringe the '279 patent by blocking all gear change command output signals during anti-lock brake system activity in the fully automatic mode of operation.  The respondents further argue that any remedial orders should not cover its new FreedomLine transmission system, which they argue does not infringe claim 15 of the '279 patent.
>
> We determine to issue both a limited exclusion order excluding AMT systems for medium-duty and heavy-duty trucks, and components thereof that infringe claim 15 of the '279 patent, and a cease and desist order directed to ArvinMeritor.  . . .
>
> Our limited exclusion order and cease and desist order both include an exception for replacement parts that are necessary to service infringing AMT systems which were installed on trucks prior to the issuance of our remedial orders.  . . .
>
> Our limited exclusion order also includes a certification provision that allows importation of AMT systems or components thereof if the importer certifies that these imports do not fall within the scope of the order. We determine to direct the limited exclusion order against the goods of all the respondents . . ..

Id., pp. 3-5.  Furthermore,

Eaton requests that the Commission strike portions of the respondents' brief relating to the respondents' new FreedomLine transmission, as well as the supporting exhibits, because the new FreedomLine transmission was not a part of the investigation.[1] We deny Eaton's motion to strike because we agree with the IA that the portion of the respondents' submission subject to the motion to strike "falls within the purview of the Commission's request for briefing on the issues of remedy, the public interest, and bonding." . . .

Id., pp. 6-7. The footnote "1" states that the respondents

do not seek a determination from the Commission regarding whether or not their new transmission system infringes claim 15 of the '279 patent, and we have not made such a determination. We note that respondents may seek an advisory opinion under Commission rule 210.79, 19 C.F.R. §210.79, as to whether their new FreedomLine transmission system falls within the scope of the limited exclusion order.

Id. Finally, both the limited exclusion order and cease-and-desist order were found to be in the public interest, and the ITC determined to set the bond during the period of review of the results of the investigation by the President at 100 percent of entered valued. See id., pp. 7-9.

In fact, both of the orders were issued a month prior to *public*ation of the agency's opinion, on April 7, 2005. According to the first of them:

Automated mechanical transmission systems for medium-duty and heavy-duty trucks and components thereof that infringe claim 15 of U.S. Patent No. 4,899,279 that are manufactured abroad by or on behalf of, or imported by or on behalf of, ZF Friedrichshafen AG, ArvinMeritor, Inc., or ZF Meritor, LLC or any of their affiliated companies, parents, subsidiaries, or other related business entities, or their successors or assigns, are excluded from entry for consumption into the United States, entry for consumption from a foreign trade zone, or withdrawal from a warehouse for consumption, for the

remaining term of that patent, except under license of the patent owner, as provided by law, and except for parts imported for use as a replacement for an identical or substantially equivalent part, subassembly, or components on an automated mechanical transmission system for medium-duty or heavy-duty trucks imported into the United States prior to the effective date of this Order.[4]

Moreover:

Pursuant to procedures to be specified by [CBP], as [it] deems necessary, persons seeking to import automated mechanical transmission systems and components thereof that are potentially subject to this Order shall certify that they are familiar with the terms of this Order, that they have made appropriate inquiry, and thereupon state that, to the best of their knowledge and belief, the products being imported are not excluded from entry under paragraph 1 of this Order. At its discretion, [CBP] may require persons who have provided the certification described in this paragraph to furnish such records or analyses as are necessary to substantiate the certification.[5]

As for the ITC Order to Cease and Desist, "[f]or the remaining term of the respective patents" respondent ArvinMeritor, Inc. has been forbidden to:

(A) import (including electronically) or sell for importation into the United States covered products;

(B) market, distribute, offer for sale, sell, or otherwise transfer (except for exportation), in the United States imported covered products;

(C) advertise imported covered products;

(D) solicit U.S. agents or distributors for imported covered products;

---

[4] Plaintiff's Memorandum of Points and Authorities, Exhibit 5, p. 3, para. 1.

[5] Id., p. 4, para. 3.

(E) aid or abet other entities in the importation, sale for importation, sale after importation, transfer, or distribution of covered products; or

(F) furnish services to its customers, including software technical support relating to covered product.[6]

The term "covered products" is defined to mean

automated mechanical transmission systems for medium-duty and heavy-duty trucks and components thereof that infringe claim 15 of U.S. Patent No. 4,899,279, including Respondent's "FreedomLine" transmission systems, except for parts imported for use as a replacement for an identical or substantially equivalent part, subassembly, or component on an automated mechanical transmission system for medium-duty or heavy-duty trucks imported into the United States prior to the effective date of this Order.[7]

Besides the foregoing prohibited conduct, the Commission's order, part IV specifies permitted conduct, and it requires specified reporting per part V (under threat of possible criminal prosecution for violation of 18 U.S.C. §1001) and record-keeping and inspection under part VI.

Against this background at the ITC, plaintiff's complaint avers, paragraph 5, that in

anticipation of this ultimate finding of infringement, on information and belief, Respondents began work on a redesigned AMT for use with medium-duty and heavy-duty trucks . . . that they now allege no longer infringes the relevant patent claim.

6. As is required by established court and Commission precedent, after an exclusion order issues, a respondent seeking to import a redesigned version of the product that was within the scope of the investigation must either obtain an advisory opinion from the Commis-

---

[6] Id., Exhibit 6, pt. III, pp. 2-3.

[7] Id., p. 2, para. (G).

sion or seek a determination of non-infringement from Customs <u>before</u> such product is lawfully entitled to gain admission into the customs territory of the United States. Respondents to this section 337 investigation have sought both, filing a request for an advisory opinion at the Commission some four months ago which is ongoing on an expedited basis, and, on information and belief, filing a request for a determination from Customs as to infringement of the redesigned AMT.[8]

7. To date, neither the Commission nor Customs ha[s] made a determination as to whether or not Respondents' redesigned AMT continues to infringe the '279 Patent.

8. Nevertheless, during the pendency of these two reviews and since the issuance of the Limited Exclusion Order, on information and belief, Respondents have imported without regard to, and in brazen violation of, that order.

9. On information and belief, at some point several months after the issuance of the April 7, 2005 Limited Exclusion Order, Customs began properly enforcing it against Respondents and their imports began experiencing some delays or detentions at the border. Thus, Respondents began to pressure Customs to allow the importation of the redesigned product asserting that it no longer infringes. In particular, Respondents have sought to convince Customs to allow for admission of the redesigned AMTs through the misuse of the certification mechanism - a mechanism designed solely to allow Customs to differentiate and permit admission of legitimate trade and products that were found not to be covered by the scope of the exclusion order.

10. Respondents' efforts to pressure Customs to allow admission of the redesigned AMTs via certification culminated in a suit filed by ArvinMeritor in this Court on August 5, 2005. . . . Court No. 05-00461. . . .

11. After th[at suit's] dismissal, Eaton sought assurances from Customs that it would properly enforce the exclusion order by not allowing admission of Respondents' redesigned AMTs for use with medium-duty and heavy-

---

[8] Underscoring in original.

duty trucks based solely upon representations by Respondents that they no longer infringe.  Instead of obtaining such assurances, Eaton received a written statement from Customs indicating that it would  not provide such assurances and would instead allow importation of the redesigned AMTs so long as the certification letter agreed upon in the settlement was provided at the time of importation.[9]

---

[9] Id.  Attached to plaintiff's Memorandum of Points and Authorities as Exhibit 1 is a declaration of its lead counsel, Sturgis M. Sobin, Esq., in support of this paragraph. That declaration and its two attachments were marked at the continued hearing in open court on August 25, 2005, as plaintiff's Exhibit 13 and offered in evidence.  The court reserved decision on defendants' objection to that proffer.  Upon further deliberation, that objection, in particular to paragraphs 4 and 5 of the declaration, is overruled, and that exhibit is hereby received.

Attachment 1 thereto was sent in the name of Mr. Sobin on August 17, 2005 to the Chief of CBP's Intellectual Property Rights Branch, Office of Regulations & Rulings,

> to establish the terms by which [Eaton Corporation] will agree not to initiate an action at the U.S. Court of International Trade ("CIT") based upon Customs' recent actions with respect to the enforcement of the [ITC] order.

Those terms were stated to be as follows:

- Your office ensures that FreedomLine transmissions are excluded from entry until the ITC or Customs conclusively determines that they do not infringe claim 15 of the '279 patent;

- When sending the revised certification form to the ports in accordance with notice of dismissal filed at the CIT on August 12, 2005, your office attaches to the certification express instructions to the ports that transmissions must not be permitted entry until permission is granted by your office based on a conclusive determination of no infringement by either Customs or the Commission and that transmissions for use in medium-duty and heavy-duty trucks (i.e., those transmissions destined for the facility in Maxton, North Carolina) must be excluded from entry;

(footnote continued)

12.  The unlawful settlement, coupled with Customs' subsequent express written statements documenting its position that redesigned AMTs can enter the United States if accompanied by an unverified certification by the Respondents, represent an unlawful abdication of Customs statutory requirement to enforce section 337 exclusion orders by excluding from entry all products within the scope of the order and violates Commission and court precedent regarding the proper enforcement of a limited exclusion order.

13.  Given the overlapping roles of both Customs and the Commission in issuing and enforcing section 337 remedial orders, the Commission should be required to coordinate and communicate with Customs to ensure that Customs is properly enforcing the Commission's orders and that they are interpreted as intended.

---

- Your office, in cooperation with the ports or other offices, immediately orders redelivery of all shipments of FreedomLine transmissions that have been entered without certifications;

- Your office provides express instructions to the ports and to Respondents that all future entries of FreedomLine transmissions must be made by paper (not electronically), and that a signed certification must be prominently included in the documentation provided to Customs for each paper entry; and that presentation fo[r] such certification does not authorize entry; and

- Your office will continue to provide Eaton Corporation a fair role in the efforts to determine whether Respondents' allegedly redesigned FreedomLine transmissions infringe claim 15 of the '279 patent.

Attachment 2 to the Sobin declaration is a copy of the CBP *e-mail* response to these terms on August 18, 2005, which states that it cannot agree to them:

Pursuant to the settlement reached by the United States and Plaintiffs in the CIT last week, CBP intends to condition importation of merchandise potentially subject to the Order upon provision of the agreed upon certification letter at importation, consistent with the express language of the Commission's April 7, 2005 Opinion on Remedies, Public Interest and Bonding, and, paragraph 3 of the Exclusion Order itself.

14. Further, given the previous unlawful admissions of redesigned AMTs, Customs should be ordered to request redelivery for all unliquidated entries of redesigned AMTs that have entered since April 7, 2005, the date when the Limited Exclusion Order issued.

ArvinMeritor, Inc.'s proposed answer, which the court hereby orders filed with the record of this case, denies the foregoing complaint paragraphs 8 to 14. As for the three immediately-preceding paragraphs, the intervenor-defendant answers as follows:

5. Admits that ZF Freidrichshafen [*sic*] AG and ArvinMeritor redesigned their FreedomLine AMT system in a way which ensures that the system does not infringe Claim 15 of Eaton's United States Patent 4,899,279 . . . and that such redesign efforts were undertaken after the Commission ALJ issued his "initial determination" and claim interpretation of the '279 patent in the underlying investigation but before the ITC issued its LEO and terminated the investigation. Denies the remainder of the allegation.

6. Denies that any law or regulation requires importers to obtain a pre-importation ruling concerning whether particular goods infringe given patents or are subject to exclusion under an exclusion order, including the LEO which is the subject of this action, before such product is lawfully entitled to gain admission into the customs territory of the United States. Avers that Customs is required to make a determination of admissibility upon presentation of an entry of merchandise, but not before. Admit [*sic*] that the Commission is conducting an Advisory Opinion Proceeding regarding ZF and ArvinMeritor's redesigned FreedomLine system. Deny [*sic*] that ZF and/or ArvinMeritor were required by court or Commission precedent to seek an Advisory Opinion. Denies the remainder of this allegation.

7. Admits that the Commission has not completed its Advisory Opinion Proceeding. Avers that the Commission's Office of Unfair Import Investigations . . . has made a staff recommendation that the Commission's . . . ALJ[] rule that the redesigned FreedomLine AMT system does not infringe Claim 15 of the '279 Patent and is not subject

to the LEO.  ArvinMeritor lacks information and belief sufficient to form a judgment as to the truth of whether or not Customs has made a determination as to whether or not Respondents' redesigned AMT continues to infringe the '279 patent and, there[]fore, ArvinMeritor denies such allegation.  Denies the balance of the allegation.

B

Thus has issue been partially joined -- save defendant ITC's answer or response to the complaint[10] and plaintiff's formal response to the motion to dismiss[11] that already has been interposed on behalf of defendant(s) United States and CBP.

(1)

As indicated, the controversy before the court focuses on CBP enforcement of the ITC's <u>Limited Exclusion Order</u>.  On or about the date of that order, April 7, 2005, the Chairman of the ITC formally notified the Secretary of the Treasury[12] of its issuance

---

[10] USCIT Rule 12(a)(1)(A) affords the agency 60 days to answer or otherwise respond to the complaint.

[11] USCIT Rule 7(d) affords the plaintiff 30 days to respond to this dispositive motion.

[12] The Tariff Act of 1930, as amended, 19 U.S.C. §1337(d), continues to require such notification of Treasury.  While the Homeland Security Act of 2002, Pub. L. No. 107-296, §403(1), 116 Stat. 2135, 2178 (Nov. 25, 2002), transferred "the functions, personnel, assets, and liabilities" of the U.S. Customs Service of the Department of the Treasury, "including the functions of the Secretary of the Treasury relating thereto", to the new Department of Homeland Security, the "Customs revenue functions" were retained by Treasury per section 412(a)(1) of that Act, 116 Stat. 2179, and those functions were defined by section 415(4), 116 Stat. 2180, to mean, among other things, "[e]nforcing sec-tion 337 of the Tariff Act of 1930".  <u>Cf</u>. <u>Vastfame Camera, Ltd. v. Int'l Trade Comm'n</u>, 386 F.3d 1108, 1110 n. 1 (Fed.Cir. 2004).

(footnote continued)

and forwarded a copy of that written notification to the Chief of the CBP Intellectual Property Rights Branch.  See CIT No. 05-00461 Complaint Exhibit C.  On or about April 26, that Branch promulgated a form for certification by any would-be importer (under penalty

_____

Nonetheless, effective May 15, 2003, such (or some) function(s) were seemingly delegated to the Department of Homeland Security as a part of Treasury Department Order 100-16, to wit:

> . . . Consistent with the transfer of the functions, personnel, assets, and liabilities of the United States Customs Service to the Department of Homeland Security as set forth in Section 403(1) of the Act, there is hereby delegated to the Secretary of Homeland Security the authority related to the Customs revenue functions vested in the Secretary of the Treasury as set forth in sections 412 and 415 of the Act, subject to the following exceptions . . . [,]

which include "copyright and trademark enforcement" but make no specific mention of either section 337 enforcement or of any enforcement as pertains to patents.  Delegation of Authority to the Secretary of Homeland Security, 68 Fed.Reg. 28,322 (May 23, 2003).  See also CBP Decision 03-24, 37 Cust.B. & Dec. No. 37, p. 17 (Sept. 10, 2003)(revising C.F.R. Title 19 to reflect changes caused by the creation of the Department of Homeland Security and the consequent governmental reorganization) and 19 C.F.R. part 0 (2005).

Such apparent delegation notwithstanding, that regulatory scheme continues (as of April 1, 2005) to maintain that, if

> the Commission finds a violation of section 337, or reason to believe that a violation exists, it may direct the Secretary of the Treasury to exclude from entry into the United States the articles concerned which are imported by the person violating or suspected of violating section 337.

19 C.F.R. §12.39(b).  Paragraph 6 of Treasury Department Order reserves that agency's "right to rescind or modify this Delegation of Authority, promulgate regulations, or exercise authority at any time based upon the statutory authority reserved to the Secretary by the Act".

for perjury) of familiarity with the Commission's exclusion order and that

> the articles being imported are not excluded from entry under paragraph 1 of the Order because:
>
> a.  The articles being imported are not automated mechanical transmission systems for use in medium-duty or heavy-duty trucks or components thereof that infringe claim 15 of U.S. Patent 4,899,279; or
>
> b.  The articles being imported are parts, not including complete transmissions, imported for use as replacements for an identical or substantially equivalent part, subassembly, or component on automated mechanical transmission systems which were installed in medium-duty or heavy-duty trucks prior to April 7, 2005.

Ibid., Exhibit E, second sheet, para. 3.  Then on May 19, 2005, the CBP Branch Chief notified the parties to the ITC proceedings that "further consideration and review . . . determined that the originally drafted certification necessitated certain revision for adequate CBP enforcement."  Plaintiff's Memorandum of Points and Authorities, Exhibit 7, second sheet.  Whereupon that revision of the form's paragraph 3(a) was introduced, to wit:

> The articles being imported are not automated mechanical transmission systems for use in medium-duty or heavy-duty trucks or components thereof[.]

Id., third sheet.  The contents of the form otherwise remained *in haec verba* the original version.

That revision became the object of ArvinMeritor, Inc.'s complaint in CIT No. 05-00461, and which resulted in CBP's return to that paragraph's original language in conjunction with the im-

mediate Stipulation of Settlement and Dismissal filed therein.  See id., Exhibit 9.  And it also led to commencement of this action one week later.

                                    II

        The only "count" of plaintiff's complaint is labelled "Declaratory Judgment".  Its ensuing prayer for relief is subdivided into ten parts, including:

        (1) declaring that Customs' enforcement position as to the redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks is arbitrary, capricious and an abuse of discretion;

        (2) setting aside Customs' enforcement position as to the redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks;

        (3) ordering the Commission and Customs to communicate as to the proper interpretation and scope of the exclusion order and the proper applicability of the certification provision;

        (4) ordering Customs to exclude (under 19 U.S.C. §1337(d)(1)) or seize where appropriate (under 19 U.S.C. §1337(i)) the redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks and not allow admission of redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks even if accompanied by certification unless a determination of non-infringement is made by either the Commission or Customs;

        (5) declaring that the redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks are subject to the Commission Limited Exclusion Order unless or until a determination of non-infringement is made by either the Commission or Customs;

        (6) ordering Customs to seek redelivery immediately of all unliquidated entries of redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks that have been admitted into the customs territory of the United States since April 7, 2005;

(7) ordering Customs to issue explicit instructions to the ports, to ArvinMeritor, and ZF stating that (a) all future importations covering automated mechanical transmission systems must be entered using paper documents (and not electronic means), and must prominently include a signed certification where appropriate; and (b) any redesigned automated mechanical transmission systems for medium-duty and heavy-duty trucks are not entitled to admission into the United States unless a determination of non-infringement is made by either the Commission or Customs[.]

This prayer also includes a specific request for grant of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction that was filed simultaneously with it. The proposed form of order accompanying that motion essentially recites the language of the foregoing paragraphs (4), (5) and (7), as well as of (8), to be in effect from the date of its entry "until and including the trial on the merits of this case".

## A

Typically, a temporary restraining order issues, if at all, at the commencement of an action. Initial reading of all plaintiff's papers upon receipt on August 19, 2005 induced the court to order the expedited hearing on August 24 (and 25) but not to grant theretofore or thereat a restraining order pending deliberation and promulgation of this opinion.

The complaint pleads subject-matter jurisdiction pursuant to 28 U.S.C. §1581(i)(3) "because [this case] involves 'embargoes or other quantitative restrictions on the importation of merchan-

dise for reasons other than the raising of revenue'"; and pursuant to 28 U.S.C. §1581(i)(4) "because it involves 'administration and enforcement with respect to matters referred to in paragraph[](3) of . . . subsection [1581(i)] and subsections (a)-(h) of . . . [1581]'".

As pointed out above, the motion of defendant(s) United States and CBP to dismiss is based upon claimed lack of jurisdiction. All four numbered affirmative defenses pleaded on behalf of ArvinMeritor, Inc. are jurisdictional. See generally [Proposed] Answer of Defendant-Intervenor ArvinMeritor, Inc., pp. 13-17. See also id., paras. 15-17. The second avers lack of a justiciable case or controversy; the third is a simple allegation that the plaintiff has failed to demonstrate jurisdiction over the matter pursuant to 28 U.S.C. §1581(i); and the fourth avers that this is a collateral attack on the ITC's Limited Exclusion Order and certification provision contained therein which should have been pursued (but was not) via appeal to the U.S. Court of Appeals for the Federal Circuit under 19 U.S.C. §1337(c) and 28 U.S.C. §1295(a)(6).

As for the first asserted affirmative defense, paragraph 58 thereof incorporates by reference the answer's preceding paragraphs, number 17 of which avers in part that,

> to the extent this action seeks a declaratory judgment related to the admissibility of merchandise, it falls within this Court's 28 U.S.C. §1581(h) jurisdiction.

> Avers that plaintiff has not made the showing of irrepar-
> able harm required to establish subject matter jurisdic-
> tion under that jurisdictional provision.  . . . Further
> avers that a declaratory judgment is the only relief
> available to plaintiffs under that basis of the Court's
> jurisdiction.  . . .

See id., paras. 60-66.

At the commencement of the hearing on August 24, 2005, counsel for the plaintiff could not parry this first affirmative defense, and notwithstanding the labelling of count I of its complaint.  See Transcript ("Tr."), pp. 38-42.  And, after due deliberation, this court hereby concludes that it does not have subject-matter jurisdiction under 28 U.S.C. §1581(h).

At this stage of proceedings, the court cannot, and therefore does not, conclude that it does not have jurisdiction pursuant to section 1581(i) of Title 28, U.S.C.  That is, it is not imperative that the court conclusively determine jurisdiction over the case as a predicate to ruling on the merits of threshold equitable relief.  In U.S. Ass'n of Importers of Textiles & Apparel v. United States, 413 F.3d 1344, 1348 (Fed.Cir. 2005), for example, while reversing a Court of International Trade grant of a preliminary injunction, the court of appeals nevertheless found "no abuse of discretion in the trial court's decision to delay consideration of the government's motion to dismiss [for lack of subject-matter jurisdiction] until briefing was completed."  Pending receipt of plaintiff's response brief (and defendant ITC's re-

sponse), suffice it to report that this court has re-read the opinion of the five-circuit-judge panel, which affirmed the Court of International Trade's section 1581(i) jurisdiction over a case in which there had been no protestable exclusion of the goods in issue by Customs.  Vivitar Corp. v. United States, 761 F.2d 1552, 1557-60 (Fed.Cir. 1985), cert. denied, 474 U.S. 1055 (1986).  But compare K Mart Corp. v. Cartier, Inc., 485 U.S. 176 (1988), with id., 485 U.S. at 191-96 (Scalia, J., dissenting).

B

The record reflects that plaintiff's counsel properly understand their burdens of persuasion with regard to both subject-matter jurisdiction and grant of a preliminary injunction.  As to the latter, they recognize that, in

> analyzing whether Eaton is entitled to injunctive re-lief[,] the Court must balance four factors:
>
> > (1) The threat of immediate, irreparable harm to Eaton;
> >
> > (2) Eaton's likelihood of success on the merits;
> >
> > (3) Whether the public interest would be served by the issuance of injunctive relief; and
> >
> > (4) Whether the balance of hardships favors Eaton.

Plaintiff's Memorandum of Points and Authorities, p. 16, citing Kemet Electronics Corp. v. Barshefsky, 21 CIT 701, 702, 969 F.Supp. 82, 84 (1997), citing Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir. 1983); Int'l Maven, Inc. v. McCauley, 12 CIT 55,

56-57, 678 F.Supp. 300, 301 (1988)(application for temporary restraining order).

(1)

This court and others have held that the severity of the injury the moving party will sustain without injunctive relief is in inverse proportion to the showing of likelihood of success on the merits.  E.g., Wolverine Tube (Canada), Inc. v. United States, 23 CIT 76, 78, 36 F.Supp.2d 410, 413 (1999), citing Makita Corp. v. United States, 17 CIT 240, 250, 819 F.Supp. 1099, 1108 (1993); Ceramica Regiomontana, S.A. v. United States, 7 CIT 390, 395, 590 F.Supp. 1260, 1264 (1984); American Air Parcel Forwarding Co. v. United States, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981).  Here, counsel claim there are two "overriding" issues:

> (1) whether . . . [CBP] may abdicate its mandatory duty imposed by 19 U.S.C. §1337(d)(1) to refuse entry of products covered by the Commission's remedial orders to the adjudicated infringer through a flawed self-certifi- cation process; and (2) whether . . . the Commission may refrain from taking actions within its powers to ensure its orders are enforced consistent with the statute and precedential law.

Plaintiff's Memorandum of Points and Authorities, pp. 1-2.

(a)

With respect to the first issue, plaintiff's position is patent: paragraph 3 of the Limited Exclusion Order , supra, when read in conjunction with the ITC's opinion, supra, prohibits the importation of AMT systems for medium- and heavy-duty trucks at this time by intervenor-defendant ArvinMeritor, Inc.

The first business day after this case commenced with an order to show cause for expedited hearing, August 22, 2005, CBP sent a written request to the ITC for clarification "as soon as possible" as to the certification provisions of its Limited Exclusion Order. Defendants' Opposition to Plaintiff's Motion, Exhibit 1, second page. That request recited in toto paragraphs 1 and 3 of the order, supra, and specifically asked

> whether the certification provision referenced in paragraph 3 of the Order is intended to extend to the importation of "redesigned" automated mechanical transmissions.

The Commission's formal answer to CBP after the hearing in open court had concluded, and which was thereafter received in camera on September 1, 2005, was:

> It does not.[13]

Further:

> An interpretation of the certification provision such that "redesigned" AMTS may be imported based on a certification by the importer that the re-designed AMT does not infringe the patent at issue is contrary to the Commission's Opinion in *Certain Automated Mechanical Transmissions for Medium-Duty and Heavy-Duty Trucks and Components Thereof* . . . [Public Version, May 9, 2005). The . . . Opinion notes respondents' request that any remedial order exempt its newly designed "FreedomLine" AMTS, which respondents alleged did not infringe. *Id*. at 4. The Commission implicitly rejected that request by directing respondents to request an advisory opinion if they want a Commission determination as to whether a newly designed AMTS does not infringe the patent at issue, and thus does not come within the scope of the Order. *Id*. at 6-7, n. 1.

---

[13] Written response from ITC Secretary to Assistant Commissioner, CBP Office of Regulations & Rulings, p. 2 (Aug. 26, 2005).

An interpretation of the subject certification provision such that the provision would apply to re-designed AMTS for which no determination on infringement has been made by either the Commission or Customs would be contrary to the Commission's long-standing practice. The Commission includes certification provisions in its exclusion orders only where Customs is unable to determine by inspection whether an imported product violates a particular exclusion order. In this case, a certification provision was included in the Order because Customs is not able to determine by inspection whether a particular AMTS falls within one of the categories of imports, referenced above, that are exempted from the Order. The Commission did not find, however, that Customs is unable to determine by inspection whether newly designed AMTS fall within the scope of the Order.

By Order of the Commission.[14]

At the outset of the hearing, Commission counsel had advised the court that CBP had asked his agency to clarify its intent with regard to certification, that the defendant ITC would respond on an expedited basis, and that this might be an

efficient resolution . . . to let the Commission explain further what it meant, and then Customs can understand and potentially leave the certification as is . . . or change it, depending on what the Commission renders.

Aug. 24 Tr., pp. 18-19. See Aug. 25 Tr., pp. 195-96 (closing argument of counsel for defendant(s) United States and CBP). Further:

_____

[14] Id. at 2-3. The court is now in receipt of the following written reaction to this order on behalf of defendant(s) United States and CBP:

. . . Notwithstanding the Commission's response, defendants stand by their position, as set forth in defendants' opposition and argued before the Court during the show cause hearing . . ..

> . . . [W]e would submit that there is no need to order
> the Commission to do something that it [i]s already in
> the process of doing on an expedited basis.  We are
> . . . working feverishly to issue this clarification.

Aug. 24 Tr., p. 20.

Not only is the court grateful for defendant ITC's ex-
peditious response, it recognizes, as it must, that the Commission
has paramount authority and responsibility under section 337 of the
Tariff Act.  Its opinion and resultant orders have set the sub-
stantive law of this case, and its post-hearing submission quoted
above has added to that law.  The court can only conclude that that
clarification buttresses the position of the plaintiff herein on
the merits of its application for immediate equitable relief.  It
also draws into question CBP's immediate compromise of Arvin-
Meritor, Inc.'s complaint in CIT No. 05-00461, thereby casting
aside the very certification CBP itself came to conclude on May 19,
2005 was necessary "for adequate . . . enforcement."  Plaintiff's
Memorandum of Points and Authorities, Exhibit 7, second sheet.
Indeed, when a member of Congress apparently questioned that
language, the agency offered the following explanation, in part:

> CBP's intent in constructing the certification
> language, which we believe is consistent with the ITC's
> intent, was to exempt from the exclusion replacement
> parts and also AMT systems that do not fall within the
> scope of the exclusion order, i.e., for use in other
> commercial applications such as in buses and cranes.  In
> the Commission Opinion, the ITC clearly identified the
> infringing products as AMT systems for medium-duty and
> heavy-duty trucks, and components thereof.  <u>We believe
> that the certification language provided for in the ITC's
> limited exclusion order was not intended to allow
> importation of putative non-infringing re-designs</u>.  It is

> CBP's understanding that the exclusion order requires that shipments of AMTs for medium-duty and heavy-duty trucks and components thereof should be excluded, unless they are accompanied by a certification certifying that the articles being imported are not excluded from entry because they do not fall within the scope of the order (i.e., are not for use in medium-duty or heavy-duty trucks), or that the articles are replacement parts for use in existing AMT systems installed prior to the issuance of the order.

Id., Exhibit 8, p. 3 (emphasis added).

Whatever the answer to the questions of Congress and the court, CBP's current form of certification, which was consented to in court by agency counsel on August 12, 2005, is not in accordance with the law governing this case.

(b)

As for the second of plaintiff's "overriding" issues, of course the ITC cannot refrain from taking steps within its authority to ensure that its orders are enforced consistent with the law, nor is there any evidence on the record herein to the contrary. Indeed, at the outset of the hearing its counsel correctly viewed plaintiff's requested equitable relief "as being against Customs, rather than against anything that the Commission has done." Aug. 24 Tr., p. 17.

More so than ever, the public has a strong interest in protecting and enforcing, when need be, U.S. intellectual property rights. It also has such interest in fair, if not genuinely free, trade among the nations of the world, which interest is not necessarily advanced by overly-aggressive, even litigious or monopolist-

ic, practices. This case seems to have elements of all these phenomena, but the court cannot find that whatever their precise balance tips against grant of the preliminary relief for which the plaintiff prays. Surely, it is not in the public interest to permit CBP not to carry out the precise mandate of the U.S. International Trade Commission.

As for the balance of any resultant hardships that a preliminary injunction could entail, the court cannot fathom how its direct object, CBP, would be injured. Of course, witnesses for both plaintiff Eaton Corporation and intervenor-defendant Arvin-Meritor, Inc. took the stand at the hearing to testify as to how, from their particular perspectives, this case could cause their respective sky to fall, to borrow a closing metaphor of counsel on both sides. See Aug. 25 Tr., pp. 183, 195. Suffice it to state that the record developed has evidence of injury to both firms that could be exacerbated by this case. Compare Aug. 24 Tr., pp. 132-35, 166; Plaintiff's Exhibit 2, paras. 21-22 with Aug. 25 Tr., pp. 92-160. Until such time as the ITC issues the advisory opinion requested by the respondents before it[15], however, the court cannot

---

[15] Plaintiff's counsel informed the court on September 7, 2005 that the ITC ALJ has

> denied the Motion for Summary Determination . . . sought by the section 337 respondents as to non-infringement of their redesigned FreedomLine AMT product.

Cf. [Proposed] Answer of Defendant-Intervenor ArvinMeritor, Inc., para. 7, supra.

find as a matter of public fact herein that they are no longer in

violation of an Eaton Corporation patent and thereby entitled to an

unencumbered balancing of their claimed hardship.

The Court of Appeals for the Federal Circuit has opined

that the

> very nature of the patent right is the right to exclude
> others.  Once the patentee's patents have been held to be
> valid and infringed, he should be entitled to the full
> enjoyment and protection of his patent rights.  The
> infringer should not be allowed to continue his infringe-
> ment in the face of such a holding.  A court should not
> be reluctant to use its equity powers once a party has so
> clearly established his patent rights.

Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1581 (1983).

Furthermore, in

> matters involving patent rights, irreparable harm has
> been presumed when a clear showing has been made of pa-
> tent validity and infringement.  This presumption derives
> in part from the finite term of the patent grant, for
> patent expiration is not suspended during litigation, and
> the passage of time can work irremediable harm.

Bell & Howell Document Mgmt. Products Co. v. Altek Systems, 132

F.3d 701, 708 (Fed.Cir. 1997), quoting with continuing approval

H.H. Robertson, Co. v. United Steel Deck, Co., 820 F.2d 384, 390

(Fed.Cir. 1987).

Here, of course, there is a clear showing of patent

validity but not yet of infringement thereof by the ITC respond-

ents' redesigned *FreedomLine* AMTs.  That issue is properly still

before the Commission.  But the essence of its clarification on August 26, 2005 to CBP with regard to that redesign's entry into the United States is caution-- for the time being, which would also be the essence of the requested preliminary injunction.  That is, not to grant that interim relief, and then to have the ITC formally determine that the redesigned *FreedomLine* still violates plaintiff's patent, would engender the irreparable harm that the law is intended to prevent.

### III

In view of the foregoing, plaintiff's motion for a preliminary injunction should be, and it hereby is, granted.  The defendants United States of America and Department of Homeland Security, United States Customs and Border Protection and their officers, employees, servants, successors and assigns are each hereby forthwith enjoined until further order of the court from permitting entry for consumption into the United States, entry for consumption from a foreign trade zone, or withdrawal from a warehouse for consumption, of that merchandise manufactured abroad by or on behalf of, or imported by or on behalf of, ZF Friedrichshafen AG, ArvinMeritor, Inc., or ZF Meritor, LLC or any of their affiliated companies, parents, subsidiaries, or other related business entities, or their successors or assigns, that has been or still is within the purview of the investigation of the United States International Trade Commission pursuant to 19 U.S.C. §1337

sub nom. Matter of Certain Automated Mechanical Transmission Systems for Medium-Duty and Heavy-Duty Trucks and Components Thereof, Inv. No. 337-TA-503, and of the plain English[16] of the Limited Exclusion Order, 70 Fed.Reg. 19,094 (April 12, 2005), and written clarification sent by the United States International Trade Commission to the Department of Homeland Security, United States Customs and Border Protection on or about August 26, 2005, which have issued as a result of the aforesaid Inv. No. 337-TA-503.

So ordered.

Dated:  New York, New York
        September 9, 2005


                                    Thomas J. Aquilino, Jr.
                                         Senior Judge

---

[16] Aug. 24 Tr., pp. 16, 17, 26, 34, 44; Aug. 25 Tr., p. 193.