Slip Op. 05 - 97

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x
UGINE & ALZ BELGIUM, N.V.; ARCELOR
STAINLESS USA, LLC; and ARCELOR TRAD- :
ING USA, LLC,
                                       :
                     Plaintiffs,
                                       :
          v.                                   Court No. 05-00444
                                       :
UNITED STATES,
                                       :
                     Defendant.
- - - - - - - - - - - - - - - - - - - x

                    Opinion & Order


[Plaintiffs' preliminary application to
 enjoin Department of Commerce liquidation
 instructions to Bureau of Customs denied.]


                                   Dated:  August 17, 2005

        Shearman & Sterling LLP (Robert S. LaRussa, Stephen J. Marzen
and Ryan A.T. Trapani) for the plaintiffs.

        Peter D. Keisler, Assistant Attorney General; David M. Cohen,
Director, and Jeanne E. Davidson, Deputy Director, Commercial Liti-
gation Branch, Civil Division, U.S. Department of Justice (Michael
D. Panzera); and Office of Chief Counsel for Import Administration,
U.S. Department of Commerce (Ada Loo and Arthur Sidney) and Bureau
of Customs and Border Protection, U.S. Department of Homeland
Security (Christopher Chen), of counsel, for the defendant.

        Collier Shannon Scott, PLLC (David A. Hartquist, R. Alan Lu-
berda, Kathleen W. Cannon and Adam H. Gordon) for proposed
intervenor-defendants AK Steel Corporation, Allegheny Ludlum
Corporation, North American Stainless, United Auto Workers Local
3303, Zanesville Armco Independent Organization, and United Steel-
workers of America, AFL-CIO/CLC.


        AQUILINO, Senior Judge:  Jurisdiction of the court is

pleaded to be pursuant to 28 U.S.C. §1581(i) over the subject

matter of this action, which is the propriety of certain liquida-

tion instructions that have been issued to the Bureau of Customs and Border Protection, U.S. Department of Homeland Security[1] by the International Trade Administration, U.S. Department of Commerce[2] in conjunction with its Notice of Amended Final Determinations: Stainless Steel Plate in Coils from Belgium and South Africa; and Notice of Countervailing Duty Orders: Stainless Steel Plate in Coils from Belgium, Italy and South Africa, 64 Fed.Reg. 25,288 (May 11, 1999), and its Antidumping Duty Orders; Certain Stainless Steel Plate in Coils From Belgium, Canada, Italy, the Republic of Korea, South Africa, and Taiwan, 64 Fed.Reg. 27,756 (May 21, 1999).

I

In commencing this action via summons and complaint, counsel for the plaintiffs also filed applications for immediate injunctive relief. The court promptly thereupon conferred with them and counsel for the defendant (and the proposed intervenor-defendants) who consented to entry (on July 27, 2005) of a temporary restraining order, which, among other things, enjoins CBP

> from implementing Liquidation Instructions issued by the [ITA] in conjunction with Message No. 5182203 (July 1, 2005)[,] Message No[.] 5189205 (July 8, 2005), Message No. 5189204 (July 8, 2005), Message No. 5199201 (July 18, 2005), or otherwise taking any action that results in the treatment of entries of Stainless Steel Plate in Coils hot rolled in Germany and not further cold rolled in Belgium as having a country of origin of Belgium for the purpose of assessing antidumping or countervailing duties[.]

---

[1] Referred to hereinafter as "CBP".

[2] Referred to hereinafter as "ITA".

The order covers listed entries of subject merchandise ("SSPC") in the ports of Chicago (between July 29, 1999 and Oct. 31, 2001), Houston (between Oct. 26, 1998 and Feb. 23, 2002), Los Angeles (on April 13, 1999), Portland (between Feb. 10, 1999 and Jan. 29, 2002), Richmond (between Feb. 24, 1999 and July 17, 2001), Seattle (between March 4, 1999 and Jan. 13, 2000), and Philadelphia (between Sept. 8, 1998 and Feb. 25, 2002).

The defendant also consented to the motion of the above-named domestic interested parties and certified or recognized unions within the meaning of 19 U.S.C. §1677(9)(C) and (D) for leave to intervene in this action as parties defendant. The plaintiffs have now filed papers in opposition to this motion to intervene, arguing, among other things, that this action

> is one solely between [them], whose entries are at issue, and the Government.

> For their part, [the] . . . Proposed Intervenors[] cannot identify any legally cognizable interest in this proceeding. Contrary to [their] suggestion, this pro-ceeding is not an appeal of administrative review pro-ceedings. Proposed Intervenors' interested party status in such an appeal is thus entirely irrelevant. Nor is this proceeding one to determine whether or to what extent Proposed Intervenors are entitled to disbursements from the special accounts created by the Continued Dump-ing and Subsidy Offset Act of 2000 ("CDSOA"), 19 U.S.C. § 1675c. As the Government has argued before the World Trade Organization ("WTO"), the CDSOA is merely a dis-bursement program and "has nothing to do with imported goods or importers." . . . Ex. 1. The CDSOA deals only with the allocation and disbursement of already collected duties, not the Government's prior discretionary proced-ures to assess and collect those duties.

Memorandum in Opposition to Motion to Intervene, pp. 1-2. This opposition has engendered in turn a motion by the proposed intervenor-defendants for leave to respond to the plaintiffs, which motion is hereby granted. The response is, in part, that,

> while domestic parties may not appeal a liquidation by Customs that has occurred, they can participate in a challenge to liquidation instructions issued by Commerce prior to liquidation. Arcelor cites no authority to the contrary. Proposed intervenors were interested parties in the proceedings that generated the challenged liquidation instructions, and indeed, Commerce sought comments from the domestic industry as well as Arcelor as to the appropriate scope and nature of those instructions. Proposed intervenors clearly have a cognizable interest in the instructions issued and the underlying decision that they represent.

Motion for Leave to Respond to Plaintiffs' Opposition to Motion to Intervene, pp. 2-3.

Upon consideration of the arguments, well-presented on both sides, the court concludes that the determinative factor is the direct participation before the ITA by the petitioners-cum-proposed-parties-at-bar in the agency promulgation of the liquidation instructions now at issue herein. See, e.g., Memorandum in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [hereinafter "Plaintiffs' Memorandum"], Exhibit 9. That is, having been privy to and part of that administrative process, their motion for leave to formally join the judicial review of the results thereof can be, and it hereby is, granted.

II

According to the complaint and corporate disclosure statements on USCIT Form 13 filed in conjunction therewith, the first-named plaintiff is a corporation organized under the laws of Belgium, whereas the two Arcelor firms are creatures of the law of Delaware, U.S.A.  All three corporations are wholly-owned subsidiaries of a Luxembourg corporation, Arcelor S.A.  Their complaint avers:

**German SSPC Mistakenly Entered as Belgian Merchandise**

9.  From September 4, 1998 to April 30, 2002, Arcelor imported into the United States SSPC that was hot rolled in Germany and not further cold rolled in Belgium.  The country of origin of such merchandise is Germany.

10. Although the SSPC was not further cold rolled in Belgium, it was pickled, annealed, packaged, and shipped from Belgium.  Accordingly, at the time of entry, Arcelor mistakenly declared the country of origin for the merchandise to be Belgium rather than Germany.

11. At the time Arcelor's German SSPC entered the United States, the Antidumping and Countervailing Duty Orders for SSPC from Belgium were in effect.

12. Arcelor paid cash deposits of antidumping and countervailing duties on the German hot-rolled SSPC that entered the United States at the rates specified in the Orders for Belgian SSPC.

13. Because the country of origin of the SSPC imported by Arcelor is Germany, that merchandise was not and never has been subject to the Antidumping and Countervailing Duty Orders for S[SPC] from Belgium and Arcelor should not have had to pay cash deposits of antidumping and countervailing duties.

14. Promptly after realizing its mistake, Arcelor filed disclosures and timely protests with Customs pursuant to 19 U.S.C. § 1514 to correct the country of origin.

15. For its part, Commerce mistakenly included the German SSPC in its calculation of the antidumping duty rates for Belgian SSPC in the first, second and third periods of review.

\* \* \*

16. Consistent with its long-standing practice, in the Fourth Administrative Review of the Antidumping Duty Order for S[SPC] from Belgium, Commerce determined that SSPC hot rolled in Germany and not further cold rolled in Belgium is German. . . .

\* \* \*

**Commerce Instructed Customs to Liquidate Entries of Arcelor's German SSPC as Belgian Merchandise**

\* \* \*

20. On July 1, 2005, Commerce issued to Customs . . . Fourth Review Period Antidumping Duty Liquidation Instructions[]. Those instructions limited - to entries of SSPC made on or after May 1, 2002 - application of Commerce's determination that SSPC hot rolled in Germany and not further cold rolled in Belgium is not subject to the Antidumping Duty Order.

21. On July 1, 2005, Commerce issued a memorandum attempting to explain its reasons for issuing the Fourth Review Period Antidumping Duty Liquidation Instructions. . . . Commerce refused to state that all SSPC hot rolled in Germany and not further cold rolled in Belgium, imported by Arcelor, is German for country-of-origin purposes. . . .

22. On July 8, 2005, . . . Commerce issued . . . for . . . entries for the period 09/01/1998 through 12/31/1999 [] "Countervailing Duty Liquidation Instructions" [that] . . . instructed Customs to liquidate SSPC hot rolled in Germany and not further cold rolled in Belgium as merchandise subject to the countervailing duty order for SSPC from Belgium. . . . Commerce gave no reason why it instructed Customs to liquidate German merchandise as Belgian.

23. On July 8, 2005, . . . Commerce issued Countervailing Duty Cash Deposit Instructions for S[SPC] from Belgium [that] . . . instructed Customs that

"[e]ffective 05/01/2002 . . . entries of SSPC hot roll-
ed in Germany and not further cold rolled in Belgium
are not subject to the suspension of liquidation and do
not require cash deposits of estimated countervailing
duties." . . .

24. On July 18, 2005, Commerce instructed Customs
to liquidate German hot rolled SSPC entered between
November 4, 1998 and April 30, 2000 as subject to the
Antidumping Duty Order for SSPC from Belgium. . . . As
with the Countervailing Duty Liquidation Instructions,
Commerce gave no reason why it instructed Customs to
liquidate German merchandise as Belgian.[3]

Whereupon the plaintiffs claim that the referenced liquidation
instructions are arbitrary, capricious, an abuse of discretion, and
otherwise not in accordance with law under 5 U.S.C. §706(2)(A).
They pray for a declaratory judgment to this effect, which would be
the basis of injunction(s) against those instructions and a pos-
sible remand to the defendant in connection therewith.

A

The plaintiffs recognize, as they must, that a prelimi-
nary injunction is an extraordinary remedy and can only be granted
upon showing:

(1) A threat of immediate irreparable harm; (2) that the
public interest would be better served by issuing than by
denying the injunction; (3) a likelihood of success on
the merits; and (4) that the balance of hardship on the
parties favor[s issuance].

S.J. Stile Associates, Ltd. v. Snyder, 68 CCPA 27, 30, C.A.D. 1261,
646 F.2d 522, 525 (1981). That is, failure to bear the burden of

---

[3] Boldface headings in original; citations omitted.

persuasion as to any of these four factors is ground for denial of an application.  E.g., American Stevedoring Inc. v. U.S. Customs Service, 18 CIT 331, 335, 852 F.Supp. 1067, 1071 (1994), citing Bomont Industries v. United States, 10 CIT 431, 638 F.Supp. 1334 (1986), and FMC Corporation v. United States 3 F.3d 424, 427 (Fed. Cir. 1993).  See Plaintiffs' Memorandum, p. 5, citing Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed.Cir. 1983).

(1)

Zenith is, of course, seminal authority with regard to the Trade Agreements Act of 1979, as amended, but the controlling issue therein was whether liquidation of the underlying entries would eliminate the only remedy for an incorrect ITA determination pursuant to that act's section 751 by depriving the Court of International Trade of the ability (*i.e.*, jurisdiction) to ensure antidumping duties in accordance with the correct margin for those entries.  The court of appeals concluded that it would.  See 710 F.2d at 809-10 and, for example, SKF USA Inc. v. United States, 28 CIT ___, ___, 316 F.Supp.2d 1322, 1327 (2004).  But jurisdiction of the court is not necessarily in jeopardy.  Indeed, as recited above, paragraph 14, the plaintiffs claim to have filed timely protests with Customs pursuant to 19 U.S.C. §1514 which, one could assume, provide them with some current protective comfort.

Be those protests as they are, this action encompasses numerous entries that have yet to be liquidated, and which has been

restrained, at least temporarily pending this preliminary opinion.
In seeking to extend this injunctive relief, plaintiffs' argument
with regard to irreparable harm is as follows:

> . . . If Customs executes those [ITA] instructions, this
> action will become moot, Commerce's instructions will be
> insulated from judicial review, and Arcelor will lose its
> day in court.  "Plainly, irreparable harm will occur
> . . . if Commerce's action is not subject to judicial
> review; and if plaintiff will be deprived of its right to
> contest antidumping duty assessments when the liquidation
> of entries currently held by Customs are liquidated."
> *Royal Business Machs., Inc. v. United States*, . . . 1
> C.I.T. 24, 25 . . . [1980].
>
>     To be sure, Arcelor ha[s] pending protests before
> Customs.  But "Customs merely follows Commerce's instruc-
> tions" and "has a merely ministerial role in liquidating
> antidumping duties under 19 U.S.C. §1514(a)(5)." *Mitsu-
> bishi Elecs. America, Inc. v. United States*, 44 F.3d 973,
> 977 (Fed.Cir. 1994).  Where, as here, "Commerce sent
> liquidation instructions to Customs, which then imposed
> antidumping duties as directed by Commerce as part of its
> ministerial functions," Commerce's liquidation instruc-
> tions would not be subject to protest and "[t]he court
> has no jurisdiction pursuant to [28 U.S.C.] § 1581(a) for
> it was Commerce's instructions, rather than an independ-
> ent decision by Customs, which determined the antidumping
> rate." *J.S. Stone Inc. v. United States*, 297 F.Supp.2d
> 1333, 1338 (CIT 2003).

Plaintiffs' Memorandum, pp. 5-6.

    If this position were well-settled, then plaintiffs'
formal protests could prove to be of no conclusive moment.  But
this court notes that all that was before the court in the cited
Royal Business Machines matter was purported immediate concern by
that plaintiff that the ITA might come to modify the scope of an
outstanding antidumping-duty order, ergo the court's conditional

language quoted above; and this court also notes that <u>J.S. Stone,</u>

<u>Inc. v. United States</u>, 27 CIT __, __ and 297 F.Supp.2d 1333, 1338

n. 6 (2003), <u>aff'd</u>, 111 Fed.Appx. 611 (Fed.Cir. 2004), itself cites

<u>Xerox Corp. v. United States</u>, 289 F.3d 792, 795 (Fed.Cir. 2002), as

holding that,

> when a plaintiff's goods are facially outside of the
> scope of an antidumping duty order, a scope determination
> by Commerce and participation in the antidumping review
> were unnecessary predicates to a challenge of Customs
> imposition of antidumping duties.  The Federal Circuit
> explained that . . . "the . . . misapplication of the
> order by Customs was properly the subject of a protest"
> under 19 U.S.C. §1514(a)(2) and reviewable by the CIT
> under 28 U.S.C. §1581(a).  . . .  Thus, misapplication of
> an antidumping order or the erroneous imposition of
> antidumping duties by Customs may be protested and suit
> brought before the court pursuant to § 1581(a).[]

In fact, it was the undersigned's opinion in <u>Xerox Corp. v. United</u>

<u>States</u>, 24 CIT 1145, 118 F.Supp.2d 1353 (2000), to the opposite

effect that was reversed and remanded by the court of appeals.

Accepting this appellate enlightenment makes it now

difficult to conclude that plaintiffs' procedural posture herein

amounts to unequivocal irreparable harm.

(2)

As for whatever harm is actually at bar, this court can

conclude that it weighs more on the plaintiffs than on either the

defendant or the intervenor-defendants for the reasons so suc-

cinctly stated, to wit:

> . . . The government holds cash deposits.  If Arcelor
> does not succeed on its claims, interested parties are
> fully secured.

Plaintiffs' Memorandum, p. 11.  Perhaps this is why experienced

counsel for the defendant and also for the intervenors have now

filed papers, consenting, at least for purposes of orderly pro-

ceeding, to entry of a preliminary injunction.  On behalf of the

government, they state their

> consent . . ., although we dispute that plaintiff*[sic]*
> has established a likelihood of success upon the merits
> of plaintiffs' claims.  Indeed, in our view, plaintiffs'
> claims are wholly without merit, and plaintiffs stand no
> chance of prevailing upon the merits.  However, a pre-
> liminary injunction will prevent the irreparable harm
> from liquidation of any entries that have not yet been
> liquidated.  See Zenith Radio Corp. v. United States, 710
> F.2d 806, 810 (Fed.Cir. 1983).

Defendant's Response to Motion for Preliminary Injunction, p. 1.

The other filing states that the

> intervenors believe that plaintiffs do not meet any of
> the requirements to receive a preliminary injunction.
> . . . [Also], it appears that granting a preliminary in-
> junction against liquidation of all of the listed entries
> may be inappropriate, because it appears that some or all
> of the entries for which plaintiffs seek to enjoin
> liquidation have already been deemed liquidated as a
> matter of law under 19 U.S.C. § 1504(d).  The request for
> an injunction is not timely made for any entries that
> have been liquidated as a matter of law.
>
> Despite these defects in plaintiffs' application,
> proposed intervenors conditionally consent to the
> granting of a preliminary injunction for purely practical
> reasons -- to allow the Government and the parties to
> fully research and brief these substantive issues, par-
> ticularly concerning the history and liquidation status
> of the subject entries.  . . .[4]

---

[4] Intervenor-Defendants' Response to Plaintiffs' Motion for
Preliminary Injunction, pp. 1-2 (emphasis in original).

(footnote continued)

(3)

However salutary the concerns for orderly proceeding (and even accommodation) are, all who engage in international trade with the United States, and in subsequent administrative and judicial review thereof, must adhere, to the best of their respective situations, to the dictates of the governing law and related rules of practice. While the court can subscribe to plaintiffs' argument that the public has a compelling interest in judicial review of administrative action[5], this subscription does not automatically favor them (or alleviate their perceived predicament[6]). That is, it is not clear from the record, such as it has been presented initially, that the public's interest compels entry now of a pre-liminary injunction in favor of the plaintiffs.

---

The court notes in passing that both responses set forth lists of entries that respective counsel apparently consider at least arguably at issue. According to the defendant's,

> [o]n August 10, 2005, plaintiffs stated that they have no objection to our amendments to their original pro-posed preliminary injunction order.

Defendant's Response to Motion for Preliminary Injunction, p. 2.

[5] Plaintiffs' Memorandum, p. 11.

[6] Cf. id. at 4 n. 2:

> . . . [S]ince Arcelor cannot know until after liqui-dation whether its remedy lies on review of Customs' protest decision or Commerce's liquidation instruc-tions, an injunction must be granted now to preserve this Court's jurisdiction and Arcelor's right to ju-dicial review.

(4)

Whatever the harm and its precise balance between the various parties herein may be, this court and others have held that the severity of the injury the moving party will sustain without injunctive relief is in inverse proportion to the showing of likelihood of success on the merits. E.g., Wolverine Tube (Canada), Inc. v. United States, 23 CIT 76, 78, 36 F.Supp.2d 410, 413 (1999), citing Makita Corp. v. United States, 17 CIT 240, 250, 819 F.Supp. 1099, 1108 (1993); Ceramica Regiomontana, S.A. v. United States, 7 CIT 390, 395, 590 F.Supp. 1260, 1264 (1984); American Air Parcel Forwarding Co. v. United States, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981).

The plaintiffs claim a "substantial likelihood of success" in challenging the ITA's liquidation instructions because "they are flatly inconsistent with the agency's long-standing practice and its subsequent determination in this proceeding".[7] Of course, the main issue at bar is whether that determination can be drawn into "this proceeding". As the complaint itself indicates, supra, that subsequent determination was rendered as a result of the ITA's fourth administrative review pursuant to section 751 of the Trade Agreements Act, 19 U.S.C. §1675, and not during the preceding three such reviews that covered the entries that are now subject to plaintiffs' attempt at resurrection -- in the aftermath

---

[7] Id. at 6 (initial capital letters and boldface print of all the words deleted).

of that fourth ITA review, which led the agency specifically to determine that its decision apply only to SSPC entries on or after May 1, 2002, *viz.*:

> In the context of the fourth review, Respondent sub-
> mitted information to the record showing that it had sold
> German SSPC to the United States.  For the final results
> of the fourth review of this antidumping duty order, we
> determined that SSPC hot-rolled in Germany and not
> further cold-rolled in Belgium was not subject to the
> antidumping duty order on SSPC from Belgium.  . . .  As
> such, our analysis of Respondent's sales of SSPC to the
> United States made during the POR for the fourth review
> did not include sales of German SSPC.  During the fourth
> administrative review, neither the Petitioners nor the
> Respondent raised this country of origin issue with re-
> spect to any specific sales reviewed during prior
> administrative reviews of this order or the effect of the
> country of origin decision on unliquidated entries from
> prior closed reviews.  As articulated in Comment 1 above,
> consistent with the Torrington Remand, we find that 1)
> our position regarding the German merchandise is fully
> articulated and final, 2) we did not calculate antidump-
> ing margins using German merchandise in the Fourth
> Administrative Review, and 3) the country of origin of
> merchandise hot-rolled in Germany was first raised in the
> Fourth Administrative Review.  Therefore, we recommend
> applying our country of origin determination to entries
> covered by the fourth review and future entries, i.e.,
> to entries made on or after May 1, 2002.[8]

And CBP was instructed accordingly.  See Plaintiffs' Memorandum, Exhibit 2, para. 3 (July 1, 2005):

> Based on the evidence reviewed by Commerce in con-
> ducting the administrative review of entries made during

---

[8] Id., Exhibit 6, p. 7 (July 1, 2005)(Memorandum re Customs Instructions for the Final Results of the Fourth Administrative Review of the Antidumping Duty Order on . . . SSPC[] from Bel-gium)(citation to Comment 4 of the ITA Issues and Decision Mem-orandum of the Fourth Administrative Review of the Antidumping Duty Order on . . . SSPC[] from Belgium (Dec. 14, 2004), ibid., Exhibit 1, available at http://ia.ita.doc.gov/frn/summary/2004-dec.htm, omitted).

> this period (05/01/02-04/30/03), the Department has
> determined that imports of SSPC hot rolled in Germany and
> not further cold rolled in Belgium are not subject to the
> antidumping duty order on SSPC from Belgium.  Entries of
> this merchandise made on or after 05/01/02 should be
> liquidated without regard to antidumping duties.

Capitalization deleted.  Compare id. with id., Exhibit 10 (June 23, 2005)(ITA draft liquidation instructions) and id., Exhibit 4, para. 5 (July 18, 2005)(antidumping-duty liquidation instructions for period 11/4/98 to 4/30/00)  and id. Exhibit 5, para. 7 (July 8, 2005)(countervailing-duty liquidation instructions for period 9/4/98 to 12/31/99).

In support of their claim of "substantial likelihood of success" on the merits, the plaintiffs challenge the agency's position on two grounds, namely, (a) it is contrary to law, and (b), because their entries have not been liquidated, administrative finality does not prevent correction of the country of origin.

(a)

Their complaint, as recited above, is that, for their entries between September 4, 1998 and April 30, 2002, they "mis-takenly" declared the country of origin to be Belgium rather than Germany, whereupon they paid cash deposits of antidumping and countervailing duties on their merchandise that entered the United States during those four years as specified in the underlying orders governing Belgium.  Moreover, the plaintiffs claim that

> [n]either Arcelor nor Commerce caught the mistake during the first three administrative reviews of the antidumping and countervailing duty orders on SSPC from Belgium.  The mistake was identified and corrected in the fourth administrative review.

Plaintiffs' Memorandum, p. 2.  Yet, they seem critical that the "only pertinent 'evidence' in the [fourth] administrative record . . . is evidence of the country in which the steel was hot rolled."  Id. at 8.  Nonetheless, they refer to other ITA proceedings involving steel wherein that alone was also the determinative factor for country of origin.  Finally, they cite Renesas Technology America, Inc. v. United States, 27 CIT ___, Slip Op. 03-106 (Aug. 18, 2003), to the effect that "liquidation instructions that treat identical merchandise differently are arbitrary and capricious".  Id.  But that case, which contested an ITA instruction to liquidate entries of an unreviewed reseller of such subject merchandise at the cash deposit rate, has been summarily reversed on appeal, Renesas Technology America, Inc. v. United States, Nos. 04-1473,-1474, 2005 WL 1540159 (Fed.Cir. July 1, 2005), based upon the opinion of the same date in Nissei Sangyo America, Ltd. v. United States, Nos. 04-1469,-1492, 2005 WL 1540161, at *1 (Fed.Cir. July 1, 2005), wherein the court of appeals stated that,

> [b]ecause the arguments in favor of the appellee [imports] are foreclosed by the decisions in  Consolidated Bearings Co. v. United States, 348 F.3d 997 (Fed.Cir. 2003) . . ., and Consolidated Bearings Co. v. United States, [412 F.3d 1266] (Fed.Cir. June 21, 2005) . . ., which collectively held that an unreviewed reseller is not statutorily entitled to the manufacturer's review rate and that Commerce in the past consistently liqui-

dated unreviewed entries from unrelated resellers at the cash deposit rate, we <u>reverse</u> the decision of the Court of International Trade.

Emphasis in original.

If this then is the only court case the plaintiffs can cite, it provides no obvious support for their thesis herein.

(b)

As indicated above, the ITA provided the parties with draft customs instructions.  <u>See</u> Plaintiffs' Memorandum, Exhibit 10.  And both sides responded.  <u>Compare</u> <u>id</u>., Exhibit 8 <u>with</u> <u>id</u>., Exhibit 9.  The agency thereupon promulgated the instructions now at issue.  <u>See</u> <u>generally</u> <u>id</u>., Exhibit 6.  Among other things, it referred to and relied on its Final Results of Redetermination on Remand[9] that issued pursuant to the order of the court in <u>Torring-ton Co. v. United States</u>, 23 CIT 452 (1999), that the ITA apply to its

> *Final Scope Ruling - Antidumping Duty Order on Cylindri-cal Roller Bearings and Parts Thereof from Japan - Regarding a Certain Cylindrical Roller Bearing Produced by Koyo Seiko Co., Ltd., and Imported by Koyo Corporation of U.S.A.* (Aug. 10, 1998), an effective date in accord-ance with the Court's holding in *Timken Co. v. United States*, 21 CIT 889, 972 F.Supp. 702 (1997), *aff'd sub nom. Koyo Seiko Co., Ltd. v. United Sates*, 155 F.3d 574 (Fed.Cir. 1998).

---

[9] The plaintiffs have reproduced a copy of this redetermina-tion and appended it to their memorandum as exhibit 7.

Judicial affirmance of those final results in their entirety[10] led
to the agency's repetition of the following statement therein in
response to the [plaintiffs'] comments on its draft liquidation
instructions herein:

> In <u>Timken</u>, the Court held that unliquidated merchandise
> which entered the customs territory of the United States
> after the publication of the antidumping duty order, but
> before the issuance of the scope ruling, should be li-
> quidated in accordance with the antidumping duty order.
> The CIT, however, stated that its holding was not
> intended to disturb the principles of administrative
> finality, i.e., require the re-opening or re-review of
> closed proceedings.  Thus, while a scope determination
> once made is effective back to the publication of the an-
> tidumping duty order, the CIT's holding in <u>Timken</u> re-
> quires the Department to apply the scope determination
> only as far back as the principle of administrative
> finality warrants - back *to unliquidated entries of sub-
> ject merchandise covered by any administrative review
> period open at the time the scope issue was first raised,
> and to all unliquidated entries on in-scope merchandise
> after that period.*[11]

The plaintiffs attempt to undermine this reasoning by
referring to the underlying <u>Timken</u> litigation cited above, but, on
its face, <u>Torrington</u> stands as further refinement of the import of
subsequent rulings as to the precise scope of an antidumping or
countervailing-duty order.  Whereupon the plaintiffs add that,

> even if this Court were to adopt Commerce's *Torrington*
> redetermination, it would only limit the *inclusion* of
> "*subject merchandise* covered by any administrative review
> period open at the time the scope issue was first
> raised."  . . . It does not by its terms prevent *exclu-
> sion* of *non-subject merchandise* - such as German merchan-

---

[10] <u>See</u> <u>Torrington Co. v. United States</u>, 24 CIT 306 (2000).

[11] Plaintiffs' Memorandum, Exhibit 6, p. 4 (emphasis added and
citations omitted by ITA herein).

dise from orders covering Belgian merchandise. Since non-subject merchandise was (by definition) never subject to the antidumping and countervailing duty orders, entries of such merchandise cannot be liquidated as subject merchandise. Any instructions to do so would be contrary to law. As a result, Arcelor has a substantial likelihood of succeeding in its claim that Commerce has no legal authority to instruct Customs to liquidate German SSPC as Belgian merchandise.

Plaintiffs' Memorandum, p. 10 (emphasis in original; citation omitted).

This court cannot concur.

### III

In sum, the court cannot and therefore does not conclude that plaintiffs' instant application satisfies all of the standards for grant of the extraordinary interim equitable relief that is a preliminary injunction. Before entry of an order to this effect, however, the plaintiffs may inform the court and opposing counsel on or before August 24, 2005[12], as to how they propose to proceed from now on in this matter.

So ordered.

Dated:  New York, New York
        August 17, 2005

<u>        Thomas J. Aquilino, Jr.        </u>
                Senior Judge

---

[12] The court's temporary restraining order is hereby extended to the close of business on that day.