# United States Court of Appeals for the Federal Circuit

2008-1213, -1214

UGINE AND ALZ BELGIUM, ARCELOR STAINLESS USA, LLC,
and ARCELOR TRADING USA, LLC,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant,

and

ALLEGHENY LUDLUM and NORTH AMERICAN STAINLESS,

Defendant-Appellants,

and

AK STEEL CORP., BUTLER ARMCO INDEPENDENT UNION,
UNITED AUTO WORKERS LOCAL 3303, UNITED STEELWORKERS OF AMERICA,
AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,

Defendants.

Thomas B Wilner, Shearman & Sterling LLP, of Washington, DC, argued for plaintiffs-appellees. With him on the brief were Ryan A.T. Trapani and Robert S. LaRussa.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Nithya Nagarajan, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

R. Alan Luberda, Kelley Drye & Warren LLP, of Washington, DC, for defendants-appellants, Allegheny Ludlum, et al. With him were David A. Hartquist and Adam H. Gordon.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

2008-1213, -1214

UGINE AND ALZ BELGIUM, ARCELOR STAINLESS USA, LLC,
and ARCELOR TRADING USA, LLC,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant,

and

ALLEGHENY LUDLUM and NORTH AMERICAN STAINLESS,

Defendant-Appellants,

and

AK STEEL CORP., BUTLER ARMCO INDEPENDENT UNION,
UNITED AUTO WORKERS LOCAL 3303, UNITED STEELWORKERS OF AMERICA,
AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,

Defendants.

Appeals from the United States Court of International Trade in case no. 05-00444,
Judge Gregory W. Carman.

_____

DECIDED: January 7, 2009

_____

Before BRYSON, DYK, and PROST, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> DYK.  Dissenting opinion filed by <u>Circuit Judge</u> PROST.

DYK, <u>Circuit Judge</u>.

The Department of Commerce ("Commerce") issued liquidation instructions requiring that certain steel imported by Plaintiff-Appellees Ugine and ALZ Belgium, Arcelor Stainless USA, LLC and Arcelor Trading USA, LLC (together "Arcelor"), be treated as Belgian instead of German in origin and subject to antidumping and countervailing duties. The Court of International Trade held that the liquidation instructions issued by Commerce were contrary to law. After Commerce adopted new instructions, the Court of International Trade affirmed, upholding the revised liquidation instructions. We hold that the Court of International Trade had jurisdiction under 28 U.S.C. § 1581(i), and properly found the first liquidation instructions improper. Accordingly, we affirm.

BACKGROUND

I

This case involves both antidumping and countervailing duty determinations, but the processes are similar for both types of determinations. Responsibility for such determinations is shared between Commerce and the International Trade Commission ("ITC"). 19 U.S.C. §§ 1671, 1673. In antidumping duty determinations, the statute charges Commerce with determining whether dumping has occurred and, if so, the amount of antidumping duties that should be imposed. See id. §§ 1673-1677n. The ITC is charged with determining whether there has been material injury or a threat of material injury to a domestic industry. Id. § 1673d(b).

Antidumping duty determinations usually start when petitions are filed with Commerce and the ITC "by or on behalf of" a domestic industry.[1] 19 U.S.C. §§ 1673a(c)(4), 1673a(b)(2). If the petition submission satisfies the statutory requirements, an antidumping investigation is then commenced. See id. § 1673a(2). The ITC, after receiving information from the domestic producers, makes a preliminary injury determination whether there is "reasonable indication" that "an industry in the United States . . . is materially injured, or . . . is threatened with material injury . . . ." Id. § 1673b(a)(1). After requesting and receiving information from foreign exporters and producers, Commerce makes a preliminary determination as to the existence and extent of dumping and the amount of duties that should be imposed. See id. §§ 1673b(b), (d)(1). Commerce's preliminary determination is published in the Federal Register. 19 U.S.C. § 1673b(f); 19 C.F.R. § 351.205(c).

Entries of imported goods before the publication date of Commerce's preliminary determination are generally not subject to antidumping duties, but entries after that date are subject to such duties.[2] After the preliminary determination, importers are required to deposit security—generally referred to as a cash deposit—sufficient to cover the estimated antidumping duties.[3] 19 U.S.C. § 1673b(d)(1)(B). This is an estimate of the final duties, paid "pending liquidation, which is the final computation or assessment of

---

[1] Commerce can also initiate the process itself under § 1673a(a), in which case Commerce officially notifies the ITC "that an investigation has been initiated." 19 U.S.C. § 1673b(a)(2)(B).

[2] The exception is when there are "critical circumstances," in which case sales up to 90 days prior to the preliminary determination can be subjected to duties and the suspension of liquidation. 19 U.S.C. § 1673b(e)(2).

[3] In most cases this takes the form of a bond, but can be an actual cash deposit where the importer does not qualify for a bond.

duties for a particular entry." Mukand Int'l, Ltd. v. United States, 502 F.3d 1366, 1367 (Fed. Cir. 2007) (citing 19 C.F.R. §§ 141.101, 141.103, 159.1).

Entries that have been liquidated cannot be subjected to additional duties. In order to preserve the opportunity to impose duties on goods entered after the date of the preliminary determination, Commerce suspends liquidation as to these entries in the preliminary determination. See 19 U.S.C. § 1673b(d)(2); see also 19 C.F.R. § 159.58.

After further proceedings, if Commerce makes a final determination that dumping has occurred and if the International Trade Commission makes a final determination of material injury, Commerce issues a final antidumping order that determines which goods are subject to antidumping duties and their duty rate. Duferco Steel, Inc., 296 F.3d 1087, 1089-90 (Fed. Cir. 2002) (citing 19 U.S.C. §§ 1671(a)(1), 1671d(b)(1), 1671d(c)(2), 1673(1), 1673d(b)(1), 1673d(c)(2)). However, this final determination addresses the existence of dumping only during a specified period of time before the preliminary determination (a period used to determine the existence of dumping but not a period as to which duties are ultimately imposed). In other words, the final order does not in fact determine the existence of dumping during any period in which duties could be imposed or fix the duty rate for any goods. Rather, the final order assumes that dumping continued after the preliminary order and such dumping will continue after the date of the final order. The final order (like the preliminary order) establishes a cash deposit rate, applicable to future entries starting from the date of the order.

The administering agencies periodically review whether dumping has in fact occurred, the amount of the duty, and the question of material injury. 19 U.S.C. §§ 1675 et seq. If no administrative review is requested, then Commerce issues

liquidation instructions to Customs to assess duties at the cash deposit rate. 19 C.F.R. § 351.212(c)(1). If review is requested, Commerce conducts an administrative review and retrospectively determines whether dumping has occurred and the final duty rates for the previously unliquidated entries subject to that review. 19 U.S.C. § 1675(a). In the course of the review, Commerce also publishes the new cash deposit rates for future entries, equal to the administrative review's final duty rates for earlier entries. 19 C.F.R. §§ 351.211(b)(2), 351.212(a). Additionally, upon request and as frequently as once a year, the ITC will conduct a similar review of its finding of material injury. 19 U.S.C. §§ 1675(a), (b).

The first review period, if review is requested, begins on the date of the preliminary determination and ends with the month before the anniversary month of the final antidumping determination order. See 19 U.S.C. § 1675(a)(1); 2 Kaye & Dunn, Int'l Trade Practice § 28:2, 28-4 (2007). Every subsequent review, if requested, begins with the anniversary month of the final antidumping determination order and ends twelve months later. 2 Harvey Kaye & Christopher Dunn, International Trade Practice § 28:2 (2007). Finally, "sunset" reviews—to determine whether the antidumping order should be rescinded—are conducted by Commerce and the International Trade Commission at least once within the first five years of issuance of the final order, and then once every five years thereafter. 19 U.S.C. § 1675(c); FAG Italia S.p.A. v. United States, 291 F.3d 806, 810 (Fed. Cir. 2002).

We have held that publication of the final results of an administrative review automatically lifts the suspension of liquidation for goods covered by that period. Int'l Trading Co. v. United States, 281 F.3d 1268, 1271 (Fed. Cir. 2002). After publication of

the final results, Commerce issues liquidation instructions to Customs with respect to these goods, and Customs liquidates them at the rate determined by the final administrative review order. 19 U.S.C. § 1675(a)(3)(B); see 19 C.F.R. § 351.212(b); see also Consol. Bearings Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003). Customs performs a ministerial function in executing these liquidation instructions. Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994).

If judicial review of a final administrative review order is requested, the Court of International Trade may enjoin the liquidation of entries to prevent liquidation until judicial review is completed. 19 U.S.C. § 1516a(c)(2); Ugine & ALZ Belgium v. United States, 452 F.3d 1289, 1292 (Fed. Cir. 2006) ("Arcelor III").

The entries at issue in this case were made between the preliminary order and the end of the period for the first administrative review. The question is whether they were subject to duties under the first administrative review order.

II

Arcelor imports stainless steel plate in coils ("SSPC"). In 1998 Commerce initiated antidumping and countervailing duty investigations of SSPC from Belgium. On September 4, 1998, Commerce published its preliminary countervailing duty determination. Preliminary Affirmative Countervailing Duty Determination and Alignment of Final Countervailing Duty Determination with Final Antidumping Duty Determination: Stainless Steel Plate in Coils from Belgium, 63 Fed. Reg. 47,239 (Sept. 4, 1998). On November 4, 1998, Commerce published its preliminary antidumping duty determination. Notice of Preliminary Determination of Sales at Less than Fair Value: Stainless Steel Plate in Coils grom Belgium, 63 Fed. Reg. 59,532 (Nov. 4, 1998). In

1999, Commerce issued the final countervailing duty order and the final antidumping duty order on Belgian SSPC. Notice of Amended Final Determinations: Stainless Steel Plate in Coils from Belgium and South Africa; and Notice of Countervailing Duty Orders: Stainless Steel Plate in Coils from Belgium, Italy and South Africa, 64 Fed. Reg. 25,288 (May 11, 1999); Antidumping Duty Orders; Certain Stainless Steel Plate in Coils from Belgium, Canada, Italy, the Republic of Korea, South Africa, and Taiwan, 64 Fed. Reg. 27,756 (May 21, 1999).

Between September 4, 1998 (the date of the preliminary countervailing duty determination) and November 4, 1998 (the date of the preliminary antidumping duty determination) to April 30, 2000, the period covered by the first administrative reviews, Arcelor imported SSPC and made cash deposits pursuant to the preliminary and final antidumping and countervailing duty orders for Belgian SSPC. Ugine & ALZ Belgium, N.V. v. United States, 391 F. Supp. 2d 1284, 1287 (Ct. Int'l Trade 2005) ("Arcelor I"). During this period, Arcelor made what it views as a mistake in its invoice entries by designating some German SSPC as being of Belgian origin. These entries were not liquidated because Arcelor appealed the results of Commerce's first countervailing duty administrative review (on other grounds), and the court issued a preliminary injunction enjoining liquidation of these entries pending resolution of the appeal. See Ugine & ALZ Belgium, N.V. v. United States, 517 F. Supp. 2d 1333, 1336 (Ct. Int'l Trade 2007) ("Arcelor IV"). As a result, Commerce suspended liquidation for Arcelor's entries that were subject to both the countervailing duty order and the antidumping duty order. Id. Ultimately, the Court of International Trade found fault with Commerce's methodology

and remanded but upheld Commerce's determination, made after remand, with respect to the countervailing duty.  Id.

On April 11, 2005, pursuant to the final court decision from the first administrative review, Commerce published its "Amended Final Results" for the first period of review, assessing the countervailing duties with respect to certain Belgian steel.  Stainless Steel Plate in Coils from Belgium: Notice of Amended Final Results of Countervailing Duty Administrative Review, 70 Fed. Reg. 18,374.  During the course of the administrative determination and court review, neither party nor Commerce addressed the question of whether steel hot rolled in Germany and not further cold rolled in Belgium was Belgian in origin.

While the judicial review of the first administrative review was pending, the second administrative review for May 1, 2000 through April 31, 2001, was completed (determining that certain Belgian steel had been dumped) and its entries were liquidated or deemed liquidated on April 13, 2003.[4]  Arcelor IV, 517 F. Supp. 2d at 1336 n.4. There was no administrative review for the third period, and the entries were liquidated or deemed liquidated on April 23, 2003.  Id.

Sometime before the fourth administrative review, in approximately April 2004, Arcelor recognized for the first time that the company had mis-designated certain products as Belgian in origin that should have been designated as German in origin with respect to entries subject to the first period of administrative review.  See Arcelor I, 391

---

[4]	An entry may be deemed liquidated under 19 U.S.C. § 1504(d) as follows: "Any entry . . . not liquidated by the Customs Service within 6 months after receiving such [liquidation] notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record or (in the case of a drawback entry or claim) at the drawback amount asserted by the drawback claimant."

F. Supp. 2d at 1287. As a result of its mis-designations, Arcelor had mistakenly made cash deposits of antidumping and countervailing duties as if its merchandise were Belgian. Id. In Arcelor's view, the merchandise was German in origin because the steel was hot rolled in Germany and not further cold rolled in Belgium before export and under Commerce precedent such steel should be treated as German in origin. Arcelor IV, 517 F. Supp. 2d at 1337 & n.5. Upon realization of its mistake, Arcelor both filed "timely protests with Customs pursuant to 19 U.S.C. § 1514," Arcelor I, 391 F. Supp. 2d at 1287, and "filed letters with Customs in order to correct the country-of-origin designation and seek a refund of the deposits." Arcelor IV, 517 F. Supp. 2d at 1338. As noted, these entries had not yet been liquidated.

Meanwhile, an administrative review of the antidumping duty order was requested and initiated for the fourth period of review (i.e., May 1, 2002 through April 30, 2003). Id. at 1336-38. The Commerce review questionnaire asked for specific details about SSPC imported from Belgium. As part of that review, Arcelor did not include in its questionnaire answers the entries which it had determined to be German. In response, Commerce requested and received a supplemental questionnaire from Arcelor which addressed these entries. Then, during the review, Arcelor argued that under Commerce's "substantial transformation" doctrine the SSPC was of German origin, not of Belgian origin, because it was hot rolled in Germany and then subjected only to minor finishing in Belgium (it was pickled, annealed, packaged, and shipped in Belgium). Id. at 1337. Arcelor argued that the final administrative review order should reflect the fact that SSPC from Germany was not subject to the antidumping order.

Commerce accepted this argument over the protests of the domestic industry, finding the location of substantial transformation, i.e. hot rolling, "dispositive." Issues and Decision Memorandum for the Final Results of the Fourth Administrative Review of the Antidumping Duty Order on Stainless Steel Plate in Coils (SSPC) from Belgium, 69 Fed. Reg. 74,495, 74,497 (Dec. 14, 2004), available at http://ia.ita.doc.gov/frn/summary/belgium/E4-3641-1.pdf at 15. Accordingly, Commerce held that the steel hot rolled in Germany and not further cold rolled in Belgium was not subject to the antidumping order. Id. ("[T]he statute requires the Department to limit its review to merchandise whose country-of-origin is Belgium."). No party appealed.

On July 1, 2005, Commerce issued final antidumping liquidation instructions from the fourth administrative review. "Liquidation Instructions for Stainless Steel Plate in Coils from Belgium Produced by Ugine & ALZ, N.V. Belgium," Message No. 5,182,203 (July 1, 2005). With regard to SSPC from Germany, the liquidation instructions stated that "[t]he Department has determined that imports of SSPC hot rolled in Germany and not further cold rolled in Belgium are not subject to the antidumping duty order on SSPC from Belgium. Entries of this merchandise made on or after 05/01/02 should be liquidated without regard to antidumping duties." Id. at ¶ 2.

Neither the fourth administrative review nor the July 1, 2005, liquidation instructions resolved the treatment of the remaining unliquidated entries from the first period of review. Commerce addressed this question on July 8, 2005, by issuing liquidation instructions. In contrast to the July 1st liquidation instructions covering the period of the fourth administrative review, Commerce's July 8, 2005, instructions determined that entries covered by the first administrative review were subject to duties.

Commerce's instructions stated that "[e]ntries of SSPC hot rolled in Germany and not further cold rolled in Belgium [i.e., German SSPC] should be liquidated at the countervailing duty rate specified in these [Customs] instructions [covering Belgian SSPC]." "Liquidation For Stainless Steel Plate in Coils from Belgium," Message No. 5,189,204 at ¶ 7 (July 8, 2005). In other words, the SSPC was to be treated as being Belgian in origin. On July 18, 2005, Commerce issued corresponding antidumping liquidation instructions, covering the remaining entries from the first administrative review, similarly providing for liquidation at the rate determined for Belgian SSPC. "Liquidation Instructions for Stainless Steel Plate in Coils from Belgium," Message No. 5,199,201 at ¶ 5 (July 18, 2005).

On July 22, 2005, Arcelor initiated these proceedings by filing suit in the Court of International Trade challenging Commerce's liquidation instructions and seeking to enjoin their enforcement. The Court of International Trade denied the parties' consent motion for a preliminary injunction, based on a finding that Arcelor had not shown a likelihood of success on the merits and that sufficient irreparable harm would result from the failure to issue an injunction. See Arcelor I, 391 F. Supp. 2d at 1294. This court reversed and ordered that a preliminary injunction be entered upon remand, finding that the issue of likelihood of success was not "clear-cut" and that there was a strong showing of irreparable harm because the denial of a preliminary injunction could result in denying Arcelor the opportunity for a decision on the merits of its claim. Arcelor III, 452 F.3d at 1295-97.

Upon remand, the Court of International Trade held that Commerce's instructions were contrary to law. Arcelor could not be expected to raise the issue before the

liquidation instructions were issued because "[p]laintiffs can not be expected to raise a challenge on an issue before it ripens or is revealed." Arcelor IV, 517 F. Supp. 2d at 1343. The court reasoned that Commerce may not impose duties on goods that are outside the scope of an antidumping or countervailing duty order. Id. at 1345; (citing 19 U.S.C. §§ 1673e(a)(2), 1671e(a)(2); see also 19 C.F.R. § 351.211(b)(1); Duferco Steel, 296 F.3d at 1098 ("Congress made no provision for bringing other merchandise within the scope of antidumping and countervailing duty orders that was otherwise outside the language of those orders.")). The court concluded that Commerce in the fourth administrative review had determined that steel hot rolled in Germany and not further cold rolled in Belgium was not Belgian in origin. The court found that Commerce had committed an ultra vires act when it issued liquidation instructions for the German SSPC from the first period of review as if it were subject to the antidumping and countervailing duty orders on Belgian SSPC. Arcelor IV, 517 F. Supp. 2d at 1345-46. The court remanded to Commerce to issue new instructions. Id. at 1349. On October 1, 2007, under protest, Commerce complied with the remand and issued revised instructions. On December 18, 2007, the Court of International Trade issued a final judgment affirming the remand results. Ugine & ALZ Belgium v. United States, No. 05-00444, slip op. at 1 (Ct. Int'l Trade Dec. 18, 2007). Both the government and domestic industry defendants appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

On this appeal the government does not challenge the Court of International Trade's holding that steel hot rolled in Germany and not further cold rolled in Belgium is not Belgian in origin. The government contends only that the suit is barred because

Arcelor failed to exhaust administrative remedies. Since the jurisdictional and merits issues as to exhaustion are intertwined, we discuss them together. This Court reviews the Court of International Trade's subject matter jurisdiction ruling and its legal decisions without deference. Consol. Bearings Co., 348 F.3d at 1001.

Unfortunately, under the statutes and regulations, there is no single judicial review method for challenging the imposition of antidumping duties. If the challenge is to the final order of an administrative review, the determination can be reviewed by the Court of International Trade under 28 U.S.C. § 1581(c) (which confers jurisdiction for civil suits commenced under 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a). Consol. Bearings Co., 348 F.3d at 1002. On the other hand, if the final order is unclear, 19 C.F.R. § 351.225 makes available a scope review under 28 U.S.C. § 1581(c). See Mukand Int'l, Ltd., 502 F.3d at 1367 ("Commerce also provides a procedure, referred to as a 'scope ruling,' to allow an interested party to determine whether a particular import is covered by an antidumping duty order."). If the party challenges the liquidation instructions issued by Commerce to implement a final order, review is available under 28 U.S.C. § 1581(i)(2), (4); Consol. Bearings Co., 348 F.3d at 1002-03. If the liquidation order is clear, but is being improperly applied by Customs, then Customs's actions can be challenged under 28 U.S.C. § 1581(a). Xerox Corp. v. United States, 289 F.3d 792, 795 (Fed. Cir. 2002).

However, § 1581(i) jurisdiction "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that subsection would be manifestly inadequate." Int'l Customs Prods., Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting Norcal/Crosetti

Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992) (quoting Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987))). Thus, jurisdiction over the challenge to the liquidation instructions pursuant to subsection (i) is not available if there is another administrative remedy, which would lead to review under another subsection of 28 U.S.C. § 1581. Moreover, a plaintiff must exhaust administrative remedies as a matter of substantive law. 28 U.S.C. § 2637 ("[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938) (finding that the district court had no jurisdiction to hear a complaint where the plaintiffs had failed to exhaust their administrative remedies); Consol. Bearings Co., 348 F.3d at 1003 ("In the Court of International Trade, a plaintiff must also show that it exhausted its administrative remedies . . . ."); Sandvik Steel Co. v. United States, 164 F.3d 596, 599-602 (Fed. Cir. 1998); but see Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1354-56 (Fed. Cir. 2006) (holding 28 U.S.C. § 1581(a) and (c) are each a "separate and distinct avenue for relief" and exhaustion does not require resort to (a) as a condition to being able to challenge under (c)).

Commerce does not contend that Arcelor should have raised the issue presented here in the fourth review, nor could it. We have recently sustained Commerce's interpretation that "only entries received during the one-year period under review may be considered." Norsk Hydro Canada, 472 F.3d at 1361. Instead, Commerce argues that Arcelor is in fact challenging the determination made in the first administrative

review order and failed to exhaust administrative remedies to that order, a failure that is assertedly fatal to its claim.[5]

The premise of the government's exhaustion argument is that the first administrative review order determined that the entries in question were subject to antidumping and countervailing duties as Belgian SSPC. There was in fact no such determination. The orders in question determined that certain SSPC "from Belgium" was both being dumped and subject to a foreign countervailable subsidy and established the final antidumping and countervailing duties for SSPC "from Belgium." Stainless Steel Plate in Coils from Belgium: Notice of Amended Final Results of Countervailing Duty Administrative Review, 70 Fed. Reg. 18,374 (Apr. 11, 2005); Stainless Steel Plate in Coils from Belgium: Final Results of Antidumping Duty Administrative Review, 66 Fed. Reg. 56,272 (Nov. 7, 2001). It did not define what criteria should be applied to determine whether particular steel was Belgian in origin nor did it state which entries were subject to antidumping or countervailing duties. Arcelor had no legitimate objection to the order. Thus, there was nothing to correct in the first administrative review order, and no administrative remedy to exhaust. As we said in Consolidated Bearings:

> [A]n action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the "administration and enforcement" of those final results. [It] challenges the manner in which Commerce administered the final results. Section 1581(i)(4) grants jurisdiction to such an action.

348 F.3d at 1002.

---

[5] Commerce also appears to contend that the issue should have been raised in the second and third administrative reviews, but under Norsk Hydro, 472 F.3d at 1361, entries during the first period of review could not be considered in these later reviews.

Commerce argues that liquidation of the remaining entries from the first administrative review with a correction to the country-of-origin will create "absurd results," because the duties were calculated in the first administrative order assuming that the entries were Belgian. Arcelor's responses to Commerce's first administrative review questionnaire, which asked for specific details about SSPC imported from Belgium, included the unliquidated entries at issue here. Commerce relied upon the questionnaire responses in its dumping determination and duty calculation. But, the fact that the duties may have been incorrectly calculated during the first administrative review is no basis for rewriting the terms of the order, which applied only to SSPC "from Belgium". We have made clear that Commerce's order must be enforced based on what the order actually says, not on what Commerce wished the order had said. See Duferco Steel, 296 F.3d at 1097-98.

Commerce's real complaint appears to be that Arcelor should not belatedly be able to correct the country-of-origin designation on its entries. However, the government does not suggest that there were any statutory or regulatory procedures for correcting Arcelor's error in the entries that Arcelor failed to exhaust. Moreover, neither the statute nor the regulations impose a time limit on the correction of errors such as those made here by Arcelor. Indeed, the existence of a time limit to challenge errors by

Customs in 19 U.S.C. § 1514[6] suggests that there is no time limit on the correction of errors—clerical or otherwise—before liquidation, although presumably, such a time limit could be imposed by regulation.

In short, there was nothing wrong with the first administrative review order. Arcelor's objection was to the application of that order reflected in the liquidation instructions. Arcelor brought the challenge at the first opportunity. Under the circumstances there was no failure to exhaust available administrative remedies. See Consol. Bearings Co., 348 F.3d at 1004 (holding that the exhaustion doctrine does not apply where there is no procedure to exhaust). Thus, the trial court properly exercised jurisdiction, and Arcelor's claim on the merits is also not barred by the exhaustion doctrine.

The remaining question is whether Commerce's liquidation instructions were erroneous when it treated the entries in question as Belgian. As we held in Shinyei Corp. of America v. United States, "[u]nder [19 U.S.C. §] 1675(a)(2)(C), the results of an administrative review determination 'shall be the basis for the assessment of countervailing or antidumping duties on entries of merchandise covered by the determination and for deposits of estimated duties.'" 355 F.3d 1297, 1306 (Fed. Cir. 2004) (quoting 19 U.S.C. § 1675 (a)(2)(C)). Commerce, under the antidumping statute, has discretion in defining the criteria for country-of-origin determinations. See 19 U.S.C.

---

[6] Any "clerical error, mistake of fact, or other inadvertence" involved in a number of determinations, including "the classification and rate and amount of duties chargeable" shall become final and conclusive unless a protest is filed. 19 U.S.C. § 1514(a). In most cases, such protests "shall be filed with the Customs Service within 180 days after but not before" the date of liquidation. Id. § 1514(c)(3). If the protest is sustained, "any duties . . . found to have been assessed or collected in excess shall be remitted or refunded." Xerox Corp., 289 F.3d at 795 (quoting 19 U.S.C. § 1515(a)).

§§ 66, 1677j(b); 19 C.F.R. § 134.1(b). Nonetheless, Commerce is obligated to follow prior precedent absent some legitimate reason for departing from it. Consol. Bearings Co., 348 F.3d at 1007. Here, Commerce's prior precedent was clear. Steel that was hot rolled in Germany and not further cold rolled in Belgium was German in origin, not Belgian, because the processes performed in Belgium, pickling and annealing, did not constitute a substantial transformation. In the Court of International Trade, Commerce offered no reason for departing from this precedent with respect to the entries in question, other than its argument—now rejected—that Arcelor failed to exhaust administrative remedies. Indeed, as noted earlier, Commerce in this appeal does not even argue that steel hot rolled in Germany and not further cold rolled in Belgium is Belgian in origin.

Commerce now speculates that the entries in question may have been correct in the first instance because the steel covered by the entries was in fact cold rolled in Belgium. In issuing liquidation instructions Commerce was, of course, free to question the corrected designation to show a German origin for the steel.[7] But in the proceeding in the Court of International Trade, Commerce never suggested that the German origin designation was incorrect if the court applied its traditional substantial transformation test, requiring "a degree of processing or manufacturing resulting in a new and different article." Issues and Decision Memorandum for the Final Results of the Fourth Administrative Review of the Antidumping Duty Order on Stainless Steel Plate in Coils (SSPC) from Belgium, 69 Fed. Reg. 74495, 74497 (Dec. 14, 2004), available at

---

[7] Section 304(a) of the Tariff Act of 1930 (19 U.S.C. § 1304(a)) contains provisions regarding false designation of origin.

http://ia.ita.doc.gov/frn/summary/belgium/E4-3641-1.pdf at 7; <u>see also</u> <u>Bestfoods v. United States</u>, 165 F.3d 1371, 1373 (Fed. Cir. 1999) (noting substantial transformation is where "as a result of manufacturing or processing steps . . . [the] product loses its identity and is transformed into a new product having a new name, character and use." (internal quotation marks omitted)).  It is too late now for Commerce to argue that the liquidation instructions might have been sustained on some other ground requiring a factual determination not made or suggested below.  The only basis for the liquidation instructions was that the time had passed to make the challenge.  Under these circumstances, the Court of International Trade was correct in concluding that the July 8, 2005, and July 18, 2005, liquidation instructions were contrary to law.

<u>AFFIRMED</u>

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2008-1213, -1214

UGINE AND ALZ BELGIUM, ARCELOR STAINLESS USA, LLC,
and ARCELOR TRADING USA, LLC,

Plaintiffs-Appellees,

v.

UNITED STATES,

Defendant-Appellant,

and

ALLEGHENY LUDLUM and NORTH AMERICAN STAINLESS,

Defendant-Appellants,

and

AK STEEL CORP., BUTLER ARMCO INDEPENDENT UNION,
UNITED AUTO WORKERS LOCAL 3303, UNITED STEELWORKERS OF AMERICA,
AFL-CIO/CLC, and ZANESVILLE ARMCO INDEPENDENT ORGANIZATION,

Defendants.

Appeals from the United States Court of International Trade in case no. 05-00444, Judge Gregory W. Carman.

PROST, <u>Circuit Judge</u> dissenting.

It is my view that jurisdiction is unavailable under 28 U.S.C. § 1581(i) because "jurisdiction under another subsection of § 1581 is or <u>could have been</u> available." <u>See</u> <u>Int'l Customs Prods., Inc. v. United States</u>, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (emphasis added); <u>see also</u> Majority Op. at 13-14. Additionally, I believe that Arcelor failed to exhaust its administrative remedies. <u>See</u> 28 U.S.C. § 2637. Accordingly, I respectfully dissent.

The majority states that "Arcelor had no legitimate objection" to the final results of the first administrative review because "[t]here was in fact no . . . determination" that the entries in the first review period were Belgian. Majority Op. at 15. I disagree. During an administrative review, Commerce must determine the "normal value," "export price," and "dumping margin" for "each entry of the subject merchandise." See 19 U.S.C. § 1675(a)(2)(A) (emphasis added); see also Majority Op. at 16 (noting that Commerce relied upon Arcelor's designation of the entries as Belgian "in its dumping determination and duty calculation"). Thus, Commerce must, as it did in this case, identify the country of origin for each entry from the review period to determine if it is "subject merchandise" that should be included in the calculations. Because Arcelor designated the stainless steel plate in coils ("SSPC") as Belgian during the first administrative review (and never raised any argument to the contrary), Commerce had no reason to expressly address the country of origin of the entries in the final results. However, that Arcelor could have challenged the country of origin of those entries is demonstrated by what actually happened during the fourth administrative review, where Arcelor successfully argued that some entries from that period were German and thus "outside the scope of th[e] review." J.A. 164; see also Majority Op. at 9-10. Because Arcelor contested the issue of origin, the final results of the fourth review expressly made a country of origin determination. See Majority Op. at 10.

If Arcelor had challenged the country of origin in the first administrative review, Commerce would have considered it at that time, as it did in the fourth administrative review. Assuming Commerce would have reached the same conclusion it reached in the fourth administrative review, the final results and liquidation instructions for the first

review period would have excluded the German SSPC. If Commerce had come to the opposite conclusion or refused to address the argument, Arcelor could have appealed the final results to the Court of International Trade at that time under 28 U.S.C. § 1581(c). Thus, because Arcelor could have obtained the relief it now seeks if it had acted during the first administrative review, the Court of International Trade does not, in my view, have jurisdiction under § 1581(i).